SCIASCIA ET AL., APPELLEES (CROSS-APPELLEES), *v.* RIVERPARK APARTMENTS, APPELLANT.

(No. 81AP-2—Decided September 1, 1981.)

*Messrs. Menapace & Sheppard, Mr. Reno J. Menapace* and *Mr. Kingston E. Malley, Jr.,* for appellees (cross-appellees).

*Messrs. Krupman, Fromson, Bownas & Selcer* and *Mr. Jeffrey E. Fromson,* for appellant.

MOYER, J. This matter is before us on defendant's appeal from a judgment of the Franklin County Municipal Court awarding plaintiffs damages for defendant's retention of their security deposit. Plaintiffs, Lynette and George Sciascia, executed a written lease to rent an apartment from defendant, Riverpark Apartments, for a term of July 1, 1978 to June 31, 1979 [*sic*]. Plaintiffs remained in possession after June 30, 1979, on a month-to-month tenancy. They paid defendant an initial security deposit of $210 with a monthly rental due on or before the first day of the month of $210.

From October 1979 until early 1980, various types of criminal activity, including vandalism, arson, and a bomb threat, were reported at Riverpark Apartments. Plaintiffs reported to the Perry Township Police Department two aggravated burglaries on January 23 and 24, 1980. Defendant responded to the criminal activity by providing additional security, which included the installation of new locks on the outside doors of the apartments and private security guards in the hallways and common areas of the apartments, and by cooperating with the Perry Township Police Department and the Federal Bureau of Investigation.

There is no evidence in the record that plaintiffs complained to defendant about the conditions at their apartment. However, on January 26, 1980, following

the reported burglaries of their apartment, plaintiffs gave defendant written notice that, because of the attempted burglaries and arsons, they would vacate their apartment on February 1, 1980.

Defendant presented plaintiffs with a list of damages to plaintiffs' apartment, including rent due for February in the amount of $210, physical damages to the apartment in the amount of $50 and a $20 charge for a false emergency call. Defendant deducted those charges from plaintiffs' security deposit and claimed a balance due from plaintiffs of $70.

The trial court awarded plaintiffs double damages, pursuant to R.C. 5321.16. In support of its appeal, defendant raises the following three assignments of error:

"The decision of the Franklin County Municipal Court is contrary to law and against the manifest weight of the evidence:

"1. By not holding that tenants did not give proper notice to vacate pursuant to Section 5321.17(B) of the Ohio Revised Code and the lease between the parties.

"2. By not holding that landlord was entitled to retain tenants' security deposit as payment of February, 1980 rent.

"3. By holding that tenants were legally justified in vacating their apartment without giving proper notice because of criminal activities committed by an unknown person or persons at Riverpark Apartments."

The issue presented by all three assignments of error is whether the criminal activity in defendant's apartment complex constituted constructive eviction of plaintiffs from their apartment, thereby obviating the requirement that plaintiffs give thirty days' notice before vacating their apartment. Defendant argues that, because plaintiffs were on a month-to-month lease with defendant, notice that plaintiffs would vacate the premises on February 1 was required thirty days before that time in order to absolve plaintiffs of liability for rent for the

month of February. The notice requirement of the lease agreement is specifically set out in paragraph 16, which reads as follows:

"* * * Resident agrees to give written notice of intention to vacate to landlord at least thirty days prior to the expiration of the initial term of this Rental Agreement or to the end of any month during any month-to-month tenancy."

Plaintiffs' contention that the foregoing provision is ambiguous is unpersuasive. It is clear from the language in the agreement that thirty days' notice must be given prior to either the expiration of the initial term of the lease or thirty days prior to the end of any month of a month-to-month tenancy. Furthermore, R.C. 5321.17(B) requires thirty days' notice for termination of a month-to-month tenancy. Plaintiffs did not give proper notice of their intention to vacate under the rental agreement. They were required to provide defendant with the thirty days' notice of their intention to vacate unless they were constructively evicted.

Defendant argues that the criminal activities committed by unknown persons at Riverpark Apartments were not legal justification for plaintiffs' vacation of their apartment without proper notice. The trial court made the following finding in this regard:

"* * * Based upon the evidence the court believes that the plaintiffs after all the problems that beset the apartments including, prowlers, unexplained fires, arson attempts and culminating in the unlawful entry of the plaintiffs' apartment by unknown person or persons did have good cause to terminate their lease. * * *"

Although the trial court did not designate it as such, its holding constitutes a finding that plaintiffs were constructively evicted from their apartment.

The law with respect to constructive eviction is found in *Liberal Savings & Loan Co.* v. *Frankel Realty Co.* (1940),

137 Ohio St. 489, 498-499 [19 O.O. 170]. In its decision the court quotes from 2 Tiffany Landlord and Tenant, 1263, Section 185(d), as follows:

"In order that there be an eviction by the landlord, in the legal sense, it is necessary that the tenant no longer retain possession of the premises. In case of an actual dispossession of the tenant, an 'actual eviction,' no question can arise in this regard, but when there is merely an interference with his possession and enjoyment, it is necessary that the tenant relinquish possession of the premises in order that there be a 'constructive eviction,' the theory being that the acts of interference by the landlord compel the tenant to leave, and that he is thus in effect dispossessed, though not forcibly deprived of possession. * * *"

We have not been cited, nor are we aware, of any Ohio case concerning constructive eviction based upon the criminal acts of third parties. Constructive eviction generally requires some interference by the landlord with the tenant's possession and enjoyment of the premises. There are circumstances in which the failure of the landlord to act would perhaps be tantamount to active interference with the tenant's possession. While the landlord has some duty to provide secure common areas in an apartment complex, he is not an insurer of the premises against criminal activity. Unfortunately, criminal activity pervades virtually every community. The risk that criminal activity will interfere with a tenant's possession and enjoyment of property must be allotted between the parties. Generally, as in the case before us, where the lease does not place the burden of providing security from criminal activity, the tenant may expect only that reasonable precautions will be taken by the landlord. Nothing more than reasonable security arises from the covenant of quiet enjoyment. This holding is in accord with cases in other jurisdictions. See *Williams* v. *William J. Davis, Inc.* (D.C. App. 1971), 275 A. 2d 231; *Net*

*Realty Holding Trust* v. *Nelson* (Super. Ct. 1976), 33 Conn. Supp. 22; *New York City Housing Auth.* v. *Medlin* (N.Y. City Civ. Ct. 1968), 57 N.Y. Misc. 2d 145.

In the case before us, the landlord in response to substantial criminal activity installed deadbolt locks on apartment entrance doors, installed locks on entrances to the apartment buildings, and hired private security guards to patrol the area. Defendant paid several thousand dollars to provide the additional security. Defendant also reported all incidents to the police and cooperated closely with the police and fire departments. The fact that defendant's measures were not sufficient to immediately stop the criminal activity of third persons does not rise to the level of an interference by the landlord with a tenant's possession and enjoyment of the property. We hold that, where there are no express provisions in a lease placing upon the landlord or the tenant a duty to provide security from criminal activity and where the landlord provides for reasonable security measures, there is no constructive eviction of a tenant who is victimized by criminal activity.

The defendant also argues that the trial court erred by not holding that defendant was entitled to retain plaintiffs' security deposit as payment of rent for February 1980. Paragraph three of the rental agreement provides as follows with regard to the security deposit:

"Resident has deposited with Landlord the sum of $210.00 as security for the full and complete performance of the duties and obligations imposed upon the resident by law and by the terms and provisions of this Rental Agreement. If resident defaults in performance, landlord may apply such portions of the security deposit in order to compensate landlord for any damages sustained by reason of such default. * * *"

Paragraph three of the lease also contains the following limitation on the use of the security deposit: "NO PART OF THE SECURITY DEPOSIT MAY BE USED

TOWARD THE LAST MONTHLY IN-
STALLMENT OF RENT."

Despite R.C. 5321.16(B), which pro-
vides that a security deposit may be ap-
plied to payment of past due rent and to
other damages suffered by the landlord,
plaintiffs argue that paragraph three of
the lease prohibits the application of the
security deposit to plaintiffs' past due
rent. Assuming the lease provision is am-
biguous as plaintiffs argue, the ambiguity
should be resolved in favor of the statute
which expressly provides for applying the
security deposit to past due rent. Plain-
tiffs further argue that paragraph three is
unconscionable if construed as we do
here. However, the fact that the General
Assembly has expressly provided for the
application of a security deposit to past
due rent defeats any argument that such
a provision is unconscionable. Defen-
dant's retention of the security deposit
and its application to rent for February
was not contrary to the rental agreement
or to law. Defendant's three assignments
of error are well taken and are sustained.

Because defendant has not assigned
as error nor argued that the court's find-
ing that plaintiffs left the apartment in
good condition, that part of the court's
judgment is affirmed. The remainder of
the judgment is reversed and remanded
with instructions to enter judgment for
defendant in the sum of $210 as defen-
dant's damages for plaintiffs' breach of
the lease.

*Judgement affirmed in part and
reversed in part with instructions.*

STRAUSBAUGH, P.J., and REILLY, J.,
concur.