THOMAS, APPELLANT, *v.* HART REALTY, INC., APPELLEE.

(No. C-830593—Decided
June 13, 1984.)

*John Nethercut* and *Legal Aid Society of Cincinnati,* for appellant.

*Kasson & DeHaan Co., L.P.A.,* and *Peter R. DeHaan,* for appellee.

*Per Curiam.* Plaintiff's single assignment of error is that the court erred when it dismissed his complaint for failure to state a claim upon which relief can be furnished, under Civ. R. 12(B)(6). In ruling on this claim, we take the material allegations of the complaint as admittedly true. *State, ex rel. Alford,* v. *Willoughby* (1979), 58 Ohio St. 2d 221 [12 O.O.3d 203], on remand (1981), 67 Ohio St. 2d 260 [21 O.O.3d 163]. For us to affirm that dismissal, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien* v. *University Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223], syllabus *(Conley* v. *Gibson* [1957], 355 U.S. 41, followed). We hold that the dismissal of plaintiff's complaint in the instant case must be affirmed.

Plaintiff sought actual and punitive damages, as well as an affirmative injunction, for defendant's violation of a claimed common-law duty to afford plaintiff, as the lessee of a ground floor apartment in a multi-apartment building, reasonable protection against foreseeable burglaries. In brief, defendant removed a security screen from a window of plaintiff's apartment because the screen violated fire regulations (it was fixed in position and could not be opened from the inside) and refused to replace it with a screen that would comply with the regulations, despite plaintiff's continuing demands for protection and the availability of a screen that could be opened from the inside. The apartment is in a high crime area. The unknown burglar or burglars entered through the unguarded window on two occasions after the fixed screen was removed and stole or destroyed plaintiff's stereo system, telephone and color television set. Thomas Denhart, the owner of defendant Hart Realty, Inc., is also the owner of a business that produces "tenant-operable security screens," which were provided to other tenants in the same building and in the neighborhood.

Plaintiff asserted one claim and one claim only: the violation of a common-law duty to afford reasonable protection to an apartment lessee against foreseeable criminal acts under the foregoing circumstances. It is important to note that plaintiff makes no claim based either on contractual rights arising from the terms of the lease (or tenancy),[1] and no claim based on tenant rights arising under R.C. 5321.01 *et seq.*[2]

---

[1] The landlord in *Sherman* v. *Concourse Realty Corp.* (1975), 47 A.D. 2d 134, 365 N.Y.Supp. 2d 239, raised the rent in exchange (in part) for the installation of a protective bell and buzzer controlling the doors leading to the common hallway, but later removed a part, and this rendered the system inoperative and allowed the third-party intruder to enter and assault plaintiff. In *Ten Associates* v. *McCutchen* (Fla. App. 1981), 398 So. 2d 860, the landlord had advertised, and specifically promised, twenty-four hour security, but there was no guard on duty to impede the entrance of the assailant. See,

also, *Braitman* v. *Overlook Terrace Corp.* (1975), 68 N.J. 368, 346 A.2d 76. These decisions against the landlord speak in terms of breach of contract, not breach of a common-law duty. In the instant case, plaintiff expressly denied in oral argument that he relies on breach of contract despite the fact that this avenue of recovery appears on the face of his complaint to be open to him.

[2] We are not persuaded by defendant's argument that the enactment of R.C. 5321.01 *et seq.,* commonly known at the Landlords and Tenants Act, eliminated all prior

We find no common-law duty imposed by Ohio case law on landlords to afford reasonable protection against entry into the separately rented apartments in a multiple occupancy building, even in the face of foreseeable entries in a "high crime area." We do not believe defendant had a common-law duty apart from his contractual obligations to install a proper security screen in the first instance, or in the second instance, to replace the screen he had removed.

This case does not involve criminal entry through, or criminal activity in, common entrances, hallways or other parts of the building under the control of the landlord, as was the situation in most of the cases cited to us by plaintiff.[3] In general, legal responsibility follows legal control in landlord-tenant relationships, 2 Restatement of the Law 2d, Torts (1965) 250-254, Sections 360 and 361, pursuant to the underlying common-law concept that a tenant or lessee acquires a temporary interest in the real estate, the possessory rights of which are such that the landlord or lessor is removed from control and responsibility. No duty of reasonable protection has traditionally been created solely out of the relationship of landlord and tenant, as has been created in other relationships; we refer to the relationship of common carrier and passenger, business invitor and invitee, custodian and ward, and innkeeper and guest.

These traditional concepts were broken by *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* (C.A.D.C. 1970), 439 F. 2d 477. Therein, although the facts were limited to the landlord's responsibility to protect the common areas of the residence complex, the court adopted a concept applicable as well to the landlord's duty with respect to separate apartments. The value of the modern urban lease in an apartment complex, that court said, is that it gives the tenant a package of rights and services, including not only a defined portion of real property (walls and ceilings), but also adequate heat, light, ventilation, plumbing, sanitation and maintenance, and, most importantly, secure doors and windows. *Kline, supra,* at 481. These new concepts would bring the landlord/tenant relationship in line with the innkeeper/tenant relationship. Cf. 2 Restatement of the Law 2d, Torts (1965) 118, Section 314A(2). See discussion at Annotation (1972), 43 A.L.R. 3d 331, 339 *et seq.*

We do not conceive it to be the function of an intermediate court of appeals

remedies and established exclusively the duties and rights of landlords and tenants in multi-occupancy residential buildings. We find nothing in the Act that specifically states that all common-law remedies are replaced by the Act. The following language from the majority and concurring opinions in *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, 25, 27 [22 O.O.3d 152], indicates the Supreme Court's conclusion that the Act is supplementary to common law:

"* * * Thus, the new remedies given tenants in R.C. Chapter 5321 are intended to be preventive and supplemental to other remedial measures.

"* * * We conclude that the General Assembly intended both to provide tenants with greater rights and to negate the previous tort immunities for landlords.

"* * *[T]he remedies afforded the tenant, as well as the landlord, in R.C. Chapter 5321, are in addition to the common law remedies possessed by both landlord and tenant prior to the enactment of R.C. Chapter 5321 in 1974. * * *"

[3] The Ohio case is *Sciascia* v. *Riverpark Apts.* (1981), 3 Ohio App. 3d 164, where it was held that the tenants were not constructively evicted by criminal activities in the common areas of an apartment complex, when the proof indicated that the landlord provided reasonable security measures under the circumstances. The leading out-of-state case of *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* (C.A.D.C. 1970), 439 F.2d 477, involved a criminal assault in a common hallway. This case is considered further, *infra,* in our decision.

in this state to abandon the traditional duties imposed by common law on the landlord/tenant relationship. That function may lie in other authorities; the legislature, for instance, might have created in the Landlords and Tenants Act reasonable duties of protection against intentional criminal acts perpetrated in multiple occupancy residences. Our reluctance is undergirded by the obvious difficulty of defining the standards applicable to a duty to protect in any but the most general, nonspecific terms, and by the unpredictable consequences of tampering with the economic bargain privately made between landlord and tenant. It may be that these concerns pale before an injustice visited on tenants by the free market; and that is, by a broad and general injustice similar to that perceived at the time when legislative enactments imposed new standards and duties on employer/employee relationships (or indeed, when the Landlords and Tenants Act created new duties and eliminated old immunities). The perception of that injustice, however, is not found in Ohio case law; it must come from more than the single case before us with its simple, elemental fact pattern.

The assignment of error has no merit. We affirm.

*Judgment affirmed.*

SHANNON, P.J., BLACK and DOAN, JJ., concur.