PHYSICIANS INSURANCE COMPANY OF OHIO, Appellant,

v.

MOREHEAD et al., Appellees.

[Cite as *Physicians Ins. Co. of Ohio v. Morehead* (1993), 88 Ohio App.3d 103.]

Court of Appeals of Ohio,
Fairfield County.

No. 1–CA–93.

Decided June 1, 1993.

*Hammond & Willard* and *Gary W. Hammond,* for appellant.

*Bricker & Eckler, James S. Monahan, Michael J. Renner* and *Maria Delpizzo Sanders,* for appellees.

---

GWIN, Judge.

On September 5, 1991, plaintiff-appellant Physicians Insurance Company of Ohio ("PICO") filed a complaint for declaratory judgment regarding its rights and duties under a contract of insurance issued to defendants-appellees Raymond

A. Morehead, M.D., and Raymond A. Morehead, M.D., Inc. ("appellee"), and sought recovery of money damages allegedly suffered as a direct consequence of appellee's fraudulent application for medical malpractice insurance and breach of that insurance contract. Appellee filed a timely answer to PICO's complaint and raised a counterclaim. Appellee's answer failed to include the affirmative defense that PICO's fraud claim was barred by the applicable statute of limitations. However, by leave of court, appellee was permitted to amend the answer to include that defense.

Appellee subsequently moved for partial summary judgment on the issues that PICO's fraud action was barred by the statute of limitations and that the policy of insurance in issue did not provide by its terms for retroactive rescission and therefore that remedy was unavailable to PICO.

The court held that no genuine issue of material fact existed and that reasonable minds could only conclude that PICO should have discovered appellee's alleged fraud in 1986, the time appellee applied for same, and, therefore, PICO's cause of action for fraud, which was not raised until September 1991, was barred by the applicable statute of limitations. The trial court further determined that reasonable minds could only conclude that appellee's alleged misrepresentations and omissions were not warranties and would not render the insurance policy void *ab initio.*

PICO seeks our review and assigns as error:

### Assignment of Error No. I

"The trial court erred in granting defendant's motion for partial summary judgment based on the four (4) year statute of limitations for fraud. There were genuine issues of material fact as to when plaintiff *should have* discovered plaintiff's fraud." (Emphasis *sic.*)

### Assignment of Error No. II

"The trial court erred in the memorandum of decision in declaring that the defendant's misrepresentations within the application for insurance were mere representations and not warranties and therefore, the policy cannot be void."

### Assignment of Error No. III

"The trial court erred in granting defendants leave to amend their answer to raise the statute of limitations defense."

### I

■ Through its first assignment of error, PICO maintains the trial court erred in determining that reasonable minds could only conclude that PICO should

have discovered appellee's alleged fraud at the time appellee applied for the insurance.

In determining whether to grant a summary judgment pursuant to Civ.R. 56, "[t]he inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion, and if when so viewed reasonable minds can come to different conclusions, the motion should be overruled." *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315. Summary judgment proceedings present an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78, 506 N.E.2d 212, 214.

R.C. 2305.09 provides that a cause of action for fraud shall be brought within four years after the cause thereof accrued. That section specifically provides that the accrual date does not commence until the fraud is discovered. The Ohio Supreme Court in interpreting R.C. 2305.09 has held that the four-year limitation period does not commence to run on claims presented in fraud until the victim of the fraud has discovered, or should have discovered the fraud. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph 2b of the syllabus.

In summarily entering judgment on the issue of whether PICO's action for fraud was barred by the statute of limitations, the trial court held:

"The Court finds that [PICO] was put on notice of inconsistencies between [appellee's] two applications for medical malpractice insurance which required [PICO] to further *inquire* into the circumstances of [appellee] Dr. Raymond A. Morehead's prior education, practice, and experience to determine if fraud was committed by [appellee] * * *. [PICO] did not act reasonably under the circumstances when it failed to inquire further into the possibility of fraud * * *. [Emphasis added.]

"The Court finds that reasonable minds would come to but one conclusion as to when the cause of action accrued which was in September, 1986; therefore barring an action in fraud in September, 1991 pursuant to R.C. 2305.09 * * *."

PICO cites this court to numerous cases in support of the proposition that summary judgment is inappropriate on the issue of when a party should have discovered a fraud had been perpetrated. While such a proposition may generally hold true, it does not operate as a matter of law, where, as here, there is insufficient evidence to raise a genuine issue of material fact.

PICO maintains that it had insufficient information to form a belief and/or discover that appellee had perpetrated a fraud at the time he applied for medical malpractice insurance in 1986.

The facts demonstrate that appellee first applied to PICO for medical malpractice insurance on September 15, 1986. In the application, appellee stated that he had a full twelve months advanced training as a vascular surgery fellow from July 1981, through June 1982. However, appellee filed a second application dated September 22, 1986, which, PICO claims, was identical to the first application except that appellee now admitted that he had drug treatment in January 1981, before entering the vascular fellowship. PICO asserts that it accepted appellee's representations, and without independent investigation, insured appellee. PICO issued malpractice insurance coverage even though it was not routine for two applications to be filed by a doctor seeking coverage and there existed inconsistencies between the two applications.

PICO argues that it was not until July 1991, that it first discovered that appellee was injecting drugs between July 1981 and January 1982, and left the vascular fellowship in January 1982 to enter drug treatment. In fact, PICO maintains that it had no reason prior to July 1991 to suspect that appellee had made misrepresentations in his application.

Upon review of the evidence before the trial court on the motion for summary judgment, we believe that reasonable minds could only conclude that PICO should have been alerted by appellee's initial two applications that he was perpetrating a fraud upon PICO. In examining these facts, one must keep in mind that PICO is in the business of defending and insuring doctors to whom they issue policies of insurance from medical malpractice claims. That business must necessarily succeed or fail on the calculated risk between collecting premiums and paying claims. With that in mind, we cannot fathom how reasonable minds could conclude that PICO in calculating these risks could, without independent investigation, issue a medical malpractice insurance policy to appellee where glaring inconsistencies appear on the face of the aforementioned applications.

PICO represents to this court that the only inconsistency between appellee's two applications concerned his drug treatment. Contrary to this representation, a much more blatant inconsistency existed. In his first application, appellee denied he had ever had medical professional liability insurance refused, cancelled, or non-renewed. In his second application, appellee admitted he did have medical professional liability insurance refused, cancelled, or non-renewed. Reasonable minds could only conclude that this inconsistency alone should have raised a "red flag" concerning PICO's determination of whether to issue medical malpractice insurance to appellee without first conducting an independent investigation of appellee's background. Instead, PICO blindly issued a policy of

insurance to appellee and accepted his premiums. It was not until years later, when the medical malpractice claims began to outweigh the collected premiums that the proverbial "red flag" was raised to full mast.

Accordingly, after reviewing the evidence in a light most favorable to PICO, we believe that reasonable minds could only conclude that PICO should have discovered appellee's fraud at the time he filed his second application for medical malpractice coverage and before such a policy was issued.

Accordingly, we overrule PICO's first assignment of error.

## II

■ Through its second assignment of error, PICO maintains the trial court erred in determining that the alleged misrepresentations in appellee's application for insurance were mere representations and not warranties. If it is determined by the trier of fact that appellee made misrepresentations, and if those misrepresentations are in fact warranties, then the insurance policy would be void *ab initio*.

The Ohio Supreme Court has ruled on this very issue in *Allstate Ins. Co. v. Boggs* (1971), 27 Ohio St.2d 216, 56 O.O.2d 130, 271 N.E.2d 855, wherein an insurance applicant misstated his age in an insurance policy application. The court held in paragraphs two and three of the syllabus as follows:

"In order for an insurer to successfully assert that an insured's misstatement as to his age in an insurance policy application is a strict warranty which makes the policy void *ab initio*, the insurer must include a statement in the policy it issues to the effect that such a representation as to age in the application is a warranty or incorporate by reference the application into the policy.

"For an insurance application to be incorporated by reference in an insurance policy, the incorporating language must be unequivocal and appear on the face of the policy; the mere fact that the policy refers to the application does not make the application a part of the policy."

The policy in issue provided:

"We rely on the statements and agreements you make in your application for coverage and, as a result, those statements and agreements are part of this agreement. * * *"

We find as a matter of law that the language used in PICO's policy conformed with the warranty dictates in *Allstate Ins. Co., supra.* Accordingly, those misrepresentations in appellee's application must be viewed as warranties.

PICO's second assignment of error is sustained.

## III

Through its third and final assignment of error, PICO maintains the trial court erred in granting appellee leave to amend his answer to raise the statute of limitations defense to PICO's fraud claim. We disagree.

Civ.R. 15(A) grants the trial court broad discretion in giving a party leave to amend his pleadings. PICO has demonstrated no abuse of that broad discretion as that term is defined.

PICO's third assignment of error is overruled.

For the foregoing reasons, the judgment entered in the Fairfield County Court of Common Pleas is reversed as it relates to its determination that appellee's misrepresentations were mere representations and not warranties. In all other respects, the judgment entered in that court is affirmed.

*Judgment affirmed in part*
*and reversed in part.*

SMART, P.J., and READER, J., concur.