DOE et al., Appellants,

v.

FLAIR CORPORATION et al., Appellees.

[Cite as *Doe v. Flair Corp.* (1998), 129 Ohio App.3d 739.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73243.

Decided Sept. 14, 1998.

*Leonard W. Yelsky* and *Jeffrey A. Yelsky*, for appellants.

*Reminger & Reminger, George S. Coakley, Andrew A. Kabat* and *Brian D. Sullivan*, for appellees.

---

MICHAEL J. CORRIGAN, Judge.

Jane Doe et al., plaintiffs-appellants, appeal from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV–307842, in which the trial court granted summary judgment in favor of Flair Corporation, d.b.a. The Islander Apartments and Western Reserve Property Management, defendants-appellees, on plaintiffs-appellants' claims of negligence, fraud, promissory estoppel, detrimental reliance and breach of contract arising out of the sexual assault of Jane Doe at The Islander Apartment Complex in Middleburg Heights, Ohio. Appellants assign five errors for this court's review.

Appellants' appeal is not well taken.

On May 1, 1996, Jane Doe (hereinafter "appellant") and her two minor children, designated as John Doe No. 1 and John Doe No. 2, filed the instant lawsuit against appellees alleging that in August 1995, appellant met with appellees' leasing agent for the purpose of leasing an apartment at The Islander Apartment complex. At that time, appellant inquired as to the safety of the complex. The leasing agent allegedly indicated that the complex was very safe and that adequate security was provided on the premises. Appellants alleged further that a sales brochure as well as a newspaper advertisement "implied that [appellees] would provide * * * a safe and secure residential dwelling unit." Appellant maintained that she entered into the lease agreement based upon the alleged representations of safety made by appellees.

Appellant alleged further that on September 16, 1995 at approximately 4:00 A.M., she was attacked in a common area of the complex as she attempted to

enter her building, forcibly dragged across Sprague Road to a wooded secluded area, where she was raped. The rapist was eventually apprehended in Medina, Ohio during another rape attempt.

Appellant claimed that appellees were liable to her for their alleged failure to provide adequate security on the premises, negligent infliction of severe emotional distress, promissory estoppel, detrimental reliance, fraud, breach of contract, breach of the covenant of quiet enjoyment, and breach of R.C. 5321.04. In addition, appellant's children brought a claim for loss of parental consortium. Appellant's promissory estoppel, detrimental reliance, fraud and breach-of-contract claims were based upon appellees' alleged representations that the building was safe and adequate security was provided. The claims for breach of covenant of quiet enjoyment and breach of R.C. 5321.04 were ultimately dismissed voluntarily by appellants.

On January 1, 1997, appellees moved for summary judgment, arguing that the presence of a serial rapist could not be foreseen, that there had never been a rape or abduction on the property in the past, and that there was no proximate cause. Appellants filed a brief in opposition to the motion for summary judgment in which they maintained that, in the three-year period preceding the assault on appellant, there were approximately three hundred eighty police department incident reports at the nine-hundred-fifty-unit complex where appellant resided. Police records contain complaints regarding burglaries, stalking, and voyeurism. Appellants also submitted the expert report of Daniel Bruce Kennedy, Ph.D. who stated that, in his opinion, "a crime against a person was reasonably foreseeable on 9/16/95 due to the nature of apartment living in general combined with the actual offense data concerning the Islander Apartments in particular." Finally, appellants submitted evidence that the assailant had been smoking near appellant's building for some time waiting for a woman to approach.

On September 19, 1997, the trial court granted appellees' motion for summary judgment on all claims. On September 25, 1997, appellants filed a timely notice of appeal from the judgment of the trial court.

Appellants' first assignment of error states:

"I. The trial court committed reversible error in granting appellees' motion for summary judgment for the reason that genuine issues of material fact existed to be litigated respecting appellants' fraud claim."

Appellants argue, through their first assignment of error, that the trial court erred in granting summary judgment in appellees favor on appellant's fraud claim, which was based upon the leasing agent's representations that she was unaware of any serious criminal activity at the apartment complex and that there was twenty-four-hour security provided, and the agent's failure to disclose the

actual extent of criminal activity when questioned by appellant at the time she entered into the lease. Appellants maintain that the leasing agent's supervisors, Edward Donnely and Michael Marelli, were aware of the extensive criminal activity at the complex and failed to inform the leasing agent. It is appellants' position that liability for fraud may result from the leasing agent's untrue statement even though she did not know the statements were untrue at the time she made them. *Kerr v. Parsons* (1948), 83 Ohio App. 204, 38 O.O. 271, 82 N.E.2d 303.

The standard for granting a motion for summary judgment is set forth in Civ.R. 56(C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that (1) there is no genuine issue of fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; Osborne v. Lyles (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The nonmovant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:

"Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C)." *Id.* at 298, 662 N.E.2d at 277.

■ The court's analysis of an appeal from a summary judgment is conducted under a *de novo* standard of review. See *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 767–768; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. *Bank One of Portsmouth v. Weber* (Aug. 7, 1991), Scioto App. No.1920, unreported, 1991 WL 156416.

■ In *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083, the Ohio Supreme Court set forth the elements of fraud as follows:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true of false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Accord *Pamer v. Pritchard Bros.* (1990), 61 Ohio Misc.2d 150, 155, 575 N.E.2d 900, 902–903.

■ A party is liable to speak, and may be liable for nondisclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another to act or refrain from acting, and the nondisclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 150, 684 N.E.2d 1261, 1269–1270.

■ In this case, appellees clearly demonstrated that the leasing agent was not familiar with the reports of criminal conduct at the apartment complex and reasonably believed it was a safe place to live when meeting with appellant. In contrast, appellants failed to demonstrate that the statements of the leasing agent were made with intent to mislead appellant into relying upon it or from which an intent to mislead can be inferred. Accordingly, no evidence has been presented to create a genuine issue as to the agent's intent to mislead.

Finally, it is apparent that appellants' reliance upon *Kerr v. Parsons, supra,* 83 Ohio App. 204, 38 O.O. 271, 82 N.E.2d 303, is misplaced. In *Kerr,* liability was premised upon a situation where a vendor knowingly permitted an agent to make false representations in order to induce a sale of land. In this instance, there is no evidence that the leasing agent's remarks were directed by her superiors or that they were the result of reliance upon any statements of her superiors. Therefore, *Kerr* does not apply to the factual scenario at hand.

For the foregoing reasons, appellants' first assignment of error is not well taken.

Appellants' second assignment of error states:

"II. The trial court committed reversible error in granting appellees' motion for summary judgment for the reason that the trial court applied incorrect legal principles respecting appellants' negligence claim."

Appellants argue, through their second assignment of error, that the trial court erred in determining that the sexual attack perpetrated against her on the night in question was not foreseeable. Appellants maintain further that genuine issues of material fact exist as to whether, having undertaken the responsibility to provide security at the apartment complex, appellees were negligent in the manner in which they performed that function.

In order to establish a claim for negligence, a plaintiff must establish a duty owed by the defendants and a breach of that duty which proximately results in an injury. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617. As a general rule, landlords have no duty to protect their tenants from the criminal acts of third persons. *Thomas v. Hart Realty, Inc.* (1984), 17 Ohio App.3d 83, 86, 17 OBR 145, 147, 477 N.E.2d 668, 671; *Sciascia v. Riverpark Apts.* (1981), 3 Ohio App.3d 164, 166, 3 OBR 188, 190–191, 444 N.E.2d 40, 42; *Johnson v. Monroe Realty Co.* (May 25, 1995), Cuyahoga App. No. 67964, unreported, 1995 WL 322278. The duty of a landlord in such cases was set forth in *Carmichael v. Colonial Square Apts.* (1987), 38 Ohio App.3d 131, 528 N.E.2d 585. *Carmichael* dealt with a tenant who had been assaulted in his own apartment and brought suit against his landlord alleging that he was negligent in failing to provide adequate security in the common areas of the building. The court determined that the landlord had complied with his duty to provide reasonable security:

"[W]hile the landlord has some duty to provide secure common areas in an apartment complex, he is not an insurer of the premises against criminal activity. * * * Thus, the duty on the landlord is only to take some reasonable precautions to provide reasonable security." *Id.* at 132, 528 N.E.2d at 586.

See, also, *Kelly v. Bear Creek Invest. Co.* (Feb. 14, 1991), Cuyahoga App. No. 58011, unreported, 1991 WL 19152, in which this court determined that liability attaches only where the landlord should have reasonably foreseen the criminal activity in question and failed to take reasonable precautions to prevent such activity, and this failure was the proximate cause of the tenant's harm. Foreseeability is based upon whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710; *Eagle v. Mathews–Click–Bauman, Inc.* (1995), 104 Ohio App.3d 792, 797, 663 N.E.2d 399, 402.

█ In this case, a review of the record demonstrates that the trial court properly determined that appellees were entitled to judgment as a matter of law on appellants' negligence claim. Clearly, appellees could not have foreseen that a serial rapist would enter the property at approximately 4:00 a.m., stalk an unsuspecting tenant, forcibly remove her from the premises, and rape her in the woods across the street from the apartment complex. This is particularly true in light of the fact that no such incident had ever occurred at the complex in the past. Under the totality of the circumstances, this court cannot now say that, under the facts of this case, the criminal act of a third party was a foreseeable event for which appellees could be found liable under a negligence theory. *Daniels v. Thistledown Racing Club, Inc.* (1995), 103 Ohio App.3d 281, 659 N.E.2d 346; *Rescigno v. Heyduk* (Aug. 15, 1996), Cuyahoga App. No. 69172, unreported, 1996 WL 465374. In addition, there is no indication in the record that appellees' security measures were negligently performed on the night of the incident. The record reveals only that the attack was the unforeseeable criminal act of a third party.

For the foregoing reasons, appellants' second assignment of error is not well taken.

Appellants' third assignment of error states:

"III. The trial court committed reversible error in granting appellees' motion for summary judgment for the reason that genuine issues of material fact existed to be litigated respecting appellants' breach of contract claim."

Appellants argue, through their third assignment of error, that the trial court erred by improperly granting summary judgment in favor of appellees on appellants' breach-of-contract claim. Specifically, appellants argue that a contractual obligation existed based upon a newspaper advertisement for the apartment complex as well as a sales brochure, both of which represented that The Islander was a safe place to live.

█ In *Meier v. Vistula Heritage Village* (1992), 62 Ohio Misc.2d 632, 637, 609 N.E.2d 1360, 1363–1364, the court noted that a breach of contract action may lie where the landlord fails to meet his obligations pursuant to the parties lease or pursuant to an implied agreement. See, also, *Blair v. Property Mgt. Consultants* (1987), 40 Ohio App.3d 103, 531 N.E.2d 752.

█ In the case *sub judice,* a review of the items relied upon by appellants in support of their breach-of-contract claim demonstrates that the lease between the parties does not require any specific security or safety measures as part of the contract. Similarly, a review of the newspaper advertisement and the sales brochure in question fails to reveal any language pursuant to which the landlord agrees to provide safety or security, nor can such material be considered

contractual in nature. Accordingly, it is apparent that the trial court properly entered summary judgment in appellees' favor on this cause of action.

Appellants' third assignment of error is not well taken.

Appellants' fourth assignment of error states:

"IV. The trial court committed reversible error in granting appellees' motion for summary judgment for the reason that genuine issues of material fact existed to be litigated respecting appellants' promissory estoppel/detrimental reliance claim."

Appellants argue, through their fourth assignment of error, that genuine issues of material fact exist regarding their promissory estoppel and detrimental reliance causes of action which should have precluded summary judgment in appellees' favor. Specifically, appellants maintain that the leasing agent's representations regarding security at the apartment complex constituted a promise of security on which appellant relied to her detriment.

In *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 624, 622 N.E.2d 1093, 1100, this court stated that, in Ohio, the doctrine of promissory estoppel has been adopted as stated in the Restatement of the Law 2d, Contracts (1973), Section 90. This provision states:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

In this case, the application of this doctrine presents a difficult question where, as here, the parties have a written lease agreement. However, in *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 274, 533 N.E.2d 325, 333–334, the Ohio Supreme Court noted that a key consideration is whether the alleged oral agreement pertains to the same subject matter as the written agreement or is completely extrinsic.

In the case herein, both parties acknowledge that appellant and the leasing agent discussed the issue of safety and that safety is not a subject of the lease agreement. In addition, the record fails to demonstrate that there is an integration clause in the lease prohibiting additional agreements. *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313, 324–325, 666 N.E.2d 235, 241–243. Accordingly, the claim of promissory estoppel/detrimental reliance is not precluded by the underlying lease.

In the case *sub judice,* a review of the record demonstrates that none of the documentary evidence relied upon by appellants set forth any promises of safety. While it is true that the leasing agent, according to appellant, stated that

the apartment complex was safe and that there was twenty-four-hour security, these remarks clearly do not constitute a "promise" for appellant's personal safety at all times while on the premises. Accordingly, the trial court properly entered summary judgment in favor of appellees on this claim.

Appellants' fourth assignment of error is not well taken.

Appellants' fifth and final assignment of error states:

"V. The trial court committed reversible error in denying appellants' motion for leave of court to file second amended complaint instanter for the reason that said motion was well within the spirit of Civ.R. 15(A)."

Appellants argue, through their fifth and final assignment of error, that the trial court abused its discretion in denying their motion for leave to file a second amended complaint to join two additional defendants in the action, The Islander Co., Ltd. and the Pearl Co. Appellants maintained that they only recently learned that these two entities were additional owners of the apartment complex. In addition, appellants sought to raise an additional cause of action for negligent misrepresentation and to correct or supplement their earlier pleading.

The amendment of pleadings is governed by Civ.R. 15(A), which provides:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calender, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders."

It is well established that the decision to grant or deny a motion for leave to file an amended complaint is well within the sound discretion of the trial court and such decision will not be disturbed on appeal absent an abuse of that discretion. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 121–122. The term "abuse of discretion" connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Mortimore v. Mayfield* (1989), 65 Ohio App.3d 450, 584 N.E.2d 770.

In this case, a review of the record demonstrates that the trial court did not abuse its discretion in denying appellants' motion for leave to file a second

amended complaint. The underlying action was filed on May 12, 1996. On August 26, 1996, the trial court ordered that all dispositive motions were to be filed by January 2, 1997, the final pretrial would be held on March 7, 1997 and that the case would be tried on March 19, 1997. On March 11, 1997, the trial court supplemented the prior order as follows: the summary judgment motions would be ruled upon by September 10, 1997; the final pretrial would be held on September 12, 1997; and trial was scheduled for September 22, 1997. Thereafter, on August 18, 1997, appellants filed their motion for leave to file a second amended complaint *instanter.* The trial court denied the motion as not being timely filed and the record fully supports this conclusion. Given the advanced stage of the proceedings, this court cannot now say that the trial court abused its discretion in denying appellants' motion for leave to file a second amended complaint. *Mortimore, supra.*

Appellants' fifth and final assignment of error is not well taken.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

SPELLACY, J., concurs.

DYKE, P.J., concurs in part and dissents in part.

DYKE, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority's determination that the trial court properly awarded summary judgment to defendants on plaintiffs' claims for fraud, breach of contract, and promissory estoppel/detrimental reliance. I also concur with the majority's determination that the trial court did not err in refusing to permit plaintiffs to file a second amended complaint. However, I believe that there are genuine issues of material fact that should have precluded the entry of summary judgment on plaintiffs' negligence claim. I would therefore reverse the judgment and remand the cause for further proceedings on this cause of action.

Summary judgment is a procedural device used to terminate litigation and must therefore be awarded with caution, resolving all doubts in favor of the party opposing the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333, 587 N.E.2d 825. In order for summary judgment to be properly rendered, it must be determined:

"(1) No genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for

summary judgment is made, that conclusion is adverse to the party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267, 273. See, also, *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639, 640–641.

The burden of establishing that there are no genuine issues of material fact to be litigated is upon the party moving for summary judgment. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1125–1126. If the moving party meets this burden, the nonmoving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. *State ex rel. Zimmerman v. Tompkins* at 449, 663 N.E.2d at 641–642.

Within their second assignment of error, plaintiffs assert that the trial court erroneously determined that the crime perpetrated against Jane Doe was not foreseeable. Plaintiffs also assert that there are genuine issues of material fact as to whether, having undertaken to provide security at the complex, defendants were negligent in the manner in which they did so.

In order to establish actionable negligence, a plaintiff must establish a duty owed by the defendants, breach of that duty, proximately resulting in injury. See *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616–617.

As to duty, in the landmark case of *Kline v. 1500 Massachusetts Ave. Apartment Corp.* (C.A.D.C.1970), 439 F.2d 477, the United States Court of Appeals for the District of Columbia Circuit held that where a landlord had actual and constructive notice that tenants were being subjected to crimes against their persons and their property in and from common hallways and that in a period just prior to time of criminal assault of plaintiff in common area, there was a wave of criminal activity, landlord was liable for injuries to plaintiff. The *Kline* court stated:

"The rationale of the general rule exonerating a third party from any duty to protect another from a criminal attack has no applicability to the landlord-tenant relationship in multiple dwelling houses. The landlord is no insurer of the tenant's safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants.

"* * *

"We now turn to the standard of care which should be applied in judging if the landlord has fulfilled his duty of protection to the tenant. Although in many

cases the language speaks as if the standard of care itself varies, in the last analysis the standard of care is the same—reasonable care in all the circumstances." *Id.* at 481–485.

In Ohio, a landlord has the duty to take reasonable measures for the safety of tenants in the common areas of an apartment complex. *Carmichael v. Colonial Square Apts.* (1987), 38 Ohio App.3d 131, 132, 528 N.E.2d 585, 586–587; cf. *Sciascia v. Riverpark Apts.* (1981), 3 Ohio App.3d 164, 166, 3 OBR 188, 190–191, 444 N.E.2d 40, 42.

Thus, as this court noted in *Kelly v. Bear Creek Invest. Co.* (Feb. 14, 1991), Cuyahoga App. No. 58011, unreported, 1991 WL 19152, liability results where the landlord should have reasonably foreseen the criminal attack and nonetheless failed to take reasonable precautions to prevent it, and this failure was the proximate cause of the tenant's harm.

In considering whether the harm should have been foreseen, the court in *Koch v. Lind* (1997), 121 Ohio App.3d 43, 54, 698 N.E.2d 1035, 1042, stated as follows: "[A]ssuming the existence of a duty to protect, such duty would only encompass reasonably foreseeable criminal activity. *Rescigno v. Heyduk* (Aug. 15, 1996), Cuyahoga App. No. 69172, unreported, 1996 WL 465374." The *Koch* court explained:

" 'It is true that in some circumstances, one may be charged with a duty of care to take precautions to protect others from intentional criminal acts or reckless conduct of third persons. * * * Such a duty arises, however, when one should realize through special facts within his knowledge or a special relationship that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another.' " *Id.* at 55, 698 N.E.2d at 1043, quoting *Irby v. St. Louis Cty. Cab Co.* (Mo.App. 1977), 560 S.W.2d 392, 395.

For business owners, this court has held that the business owner's knowledge of criminal·acts must be determined from the totality of the circumstances, keeping in mind that the circumstances must be "somewhat overwhelming." See *Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 396, 642 N.E.2d 657, 662–663. However, it is not necessary that the defendant foresee the particular injury or particular method of injury that in fact results from the negligence; the issue of whether the harm should have been foreseen involves an inquiry of whether the negligent act "is likely to result in injury to someone." *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 180–181, 423 N.E.2d 467, 471; *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 619, 653 N.E.2d 661, 670.

In determining whether the defendant took "reasonable precautions" in this instance, it is clear that in general, where a duty is undefined or is defined only in

abstract or general terms, it is for the jury to ascertain and determine the reasonableness of the defendant's acts and conduct. Cf. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 374–378, 53 O.O. 274, 277–278, 119 N.E.2d 440, 444. *Poiry v. Schneider* (Mar. 31, 1987), Lucas App. No. L–86–294, unreported, 1987 WL 8922. However, if the plaintiff's injury was not foreseeable, then the defendant cannot be liable as a matter of law. *Allison v. Field Local School Dist.* (1988), 51 Ohio App.3d 13, 14, 553 N.E.2d 1383, 1384–1385.

Proximate cause is established when the plaintiff shows that from the original wrongful or negligent act, a "natural and continuous sequence produces a result which would not have taken place without the [original] act." *Strother v. Hutchinson, supra*, 67 Ohio St.2d at 286, 21 O.O.3d at 180, 423 N.E.2d at 470. To find that a "natural and continuous sequence produces a result," the inquiry is whether the injury could have been foreseen or reasonably anticipated from the negligent act. *Id.*; cf. *Reed v. Weber* (1993), 83 Ohio App.3d 437, 441, 615 N.E.2d 253, 255–256. Generally, proximate cause is a question of fact for the jury unless reasonable minds could not differ. *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 269, 617 N.E.2d 1068, 1071. It is possible to have more than one proximate cause of an injury. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 831.

In determining whether a defendant's actions were the proximate cause of a plaintiff's injury where there have been acts by a third party, it is clear that if the intervening acts are of "such a kind that no foresight could have been expected to look out for them, the defendant is not to blame for having failed to do so." *Jeffers v. Olexo, supra*, 43 Ohio St.3d at 144–145, 539 N.E.2d at 618. Similarly, when a criminal act of a third person intervenes between the defendant's conduct and a plaintiff's injuries, the defendant's negligence is the proximate cause of the plaintiff's injuries if the defendant could have reasonably foreseen the intervening act of the third person. *Feichtner v. Ohio Dept. of Transp.* (1995), 114 Ohio App.3d 346, 359, 683 N.E.2d 112, 120–121. Cf. *Knor v. Parking Co. of Am.* (1991), 73 Ohio App.3d 177, 190, 596 N.E.2d 1059, 1067.

In this matter, defendants focused upon the unpredictability of the assailant's criminal act. Defendants asserted that Doe's assailant was a serial rapist who preyed upon women in Cuyahoga and Medina Counties before being apprehended in Medina. Defendants asserted that the assailant was not a resident of the apartment and was not visiting friends there, and that his presence was unforeseen. Defendants further asserted that there had never been an abduction or rape at the complex prior to this incident, and there were no reports of any unusual activity or suspicious individuals on the premises the night Doe was assaulted. Defendants indicated that Doe, who worked as a dancer, came home very late at night and picked up her children at another building on the complex,

had never expressed any fears regarding her safety or requested any additional security measures. Defendants therefore maintained that it could not reasonably have been foreseen that a serial rapist would prey upon a resident and they therefore owed no duty of protection against this unforeseeable criminal conduct.

Defendants also demonstrated that the area from which Doe was abducted has three lights at the entranceway, lighting within the apartment itself and the carport, an entranceway containing an unlocked outer door, a locked inner door and buzzer system. Finally, defendants demonstrated that on the night of September 16, 1995, an off-duty police officer patrolled the grounds from 10:30 p.m. until 4:00 a.m. and that the Middleburg Heights Police patrolled the area on their regular city patrols.

In opposition to summary judgment on the negligence claims, plaintiffs maintained that a crime against a person was foreseeable. Plaintiffs presented evidence that from 1992 into 1995, there were approximately three hundred eighty police department incident reports at the nine-hundred-fifty-unit complex. According to the records of the Middleburg Heights Police Department, these incidents included two stranger-on-stranger assaults, one concerning the stalking of a woman, ten apartment burglaries, eleven miscellaneous thefts and two reports of voyeurism. Plaintiffs further indicated that they were in the process of obtaining all of the incident reports maintained internally by the apartment complex which may not have had police involvement.

In addition, plaintiffs submitted the expert report of Daniel B. Kennedy, Ph.D., a professor of criminal justice and a Certified Protection Professional. Kennedy opined that a "crime against the person was foreseeable" at the complex. He also opined that it was not "patrol friendly" and had many hiding places within which potential criminals can lurk. Kennedy stated:

"I believe a crime against the person was foreseeable and that such foreseeability should have precluded Donna Chensky from representing to Jane Doe that she was unaware of the crime problems and otherwise making comments concerning the safety of the premises.

"Apartment living presents security problems due to the large numbers of people living in proximity who are often more youthful and who are more anonymous to each other due to the relatively high turnover experienced at such multiple-occupancy developments. These problems are exacerbated when a property is not 'patrol friendly' and has poor sight lines and many hiding places in which potential criminals can lurk. This is the case at The Islander Apartments.

"That such criminogenic conditions exist at The Islander Apartments is evidenced by the Middleburg Heights Police Department reports I reviewed for the

period 7/20/92 to 7/23/95. These documents revealed, among other crimes, at least 2 stranger-on-stranger assaults (one involving the stalking of a woman), 11 miscellaneous burglaries, 10 apartment burglaries, and 2 reports of voyeurism (Peeping Toms). It is more likely than not that any person such as [Doe], who was particularly concerned about personal safety, would have wanted this information before making a rental decision and in deciding how to approach her apartment building at night.

"Burglaries are troublesome from a security point of view because the U.S. Department of Justice reports that in about one-third of cases where a dwelling is occupied when a burglar enters, there will be an injury. Voyeurism is problematic because voyeurs often suffer from more than one paraphilia and can present a physical danger to their targets. I note that criminologists have documented that more and more women are living alone or with their children in apartment complexes and are thus exposed to greater risks than in the past. Finally, I note that criminologists estimate that only 50 percent of actual crimes are ever reported. We are, therefore, dealing with the very minimum of crimes here. In other words, I believe more crimes actually occurred at this apartment complex than were formally reported.

"In conclusion, I believe a crime against the person was reasonably foreseeable on 9/16/95 due to the nature of apartment living in general combined with the actual offense data concerning The Islander Apartments in particular."

I believe that this conflict in the evidence creates a genuine issue of material fact as to whether the attack on Doe was foreseeable, and I believe that the trial court erred in concluding that the attack was not foreseeable as a matter of law.

Further, although defendants outlined their security measures, they presented absolutely no evidence that these measures constituted "reasonable precautions" under the circumstances. In opposition, plaintiffs maintained that the defendants' measures were unreasonable since ingress to and egress from the premises were not monitored, there was no guardhouse and there were no security cameras. Accordingly, in my view, there are genuine issues of material fact as to whether defendants took reasonable precautions for safety in common areas.

Moreover, it is essential to observe that plaintiffs alleged that defendants failed to "provide adequate security." Thus, plaintiffs raised the issue of whether the security was undertaken in a reasonable manner. Cf. *Meier v. Vistula Heritage Village* (1992), 62 Ohio Misc.2d 632, 638, 609 N.E.2d 1360, 1364–1365. In their motion for summary judgment, defendants outlined the security measures implemented on the premises, but they did not present evidence to demonstrate that these measures were undertaken with reasonable care on the night that Doe was attacked. Defendants presented no evidence to indicate what actions the security

officer undertook on the night of the abduction and rape, and defendants presented no evidence to indicate why the shift was terminated at 4:00 a.m.

In opposition to the motion, plaintiffs argued that there was a genuine issue of material fact as to whether defendants were negligent in the manner in which they actually undertook to provide security. Plaintiffs demonstrated that on the night Doe was attacked, there was a single guard on duty from 10:30 p.m. until 4:00 a.m.[1] In this connection, plaintiffs questioned the rationale for terminating the security shift at 4:00 a.m.[2] Plaintiffs additionally presented some evidence that the assailant was in a carport, smoking and waiting for a woman to approach.

In ruling upon this aspect of the motion, the trial court stated as follows:

"There has been no suggestion by the plaintiffs that the security precautions taken by the defendants were not reasonable or that any of the security devices used by the defendants were malfunctioning on the night of this incident. The plaintiff does allege that the incident might have been avoided if the off duty patrol officer on duty did not end his shift at 4:00 a.m., slightly before this incident occurred. Yet, given the vast size of this complex it would be pure speculation to assert that the security officer on duty could have prevented this incident.

"There has been no case law offered by the plaintiff which suggests that the defendants were obligated to provide security on the complex 24 hours a day. Plaintiffs admit that the landlord provided more security to safeguard the common area than required by law. There are no allegations that the security guard left early, that any door was unlocked, or that the security measures provided failed in any other way. Thus, it can be said as a matter of law that the defendants did not negligently perform its voluntarily assumed duty to provide security."

I believe that this conclusion reflects an erroneous application of Civ.R. 56. As noted previously, it is the moving party which bears the burden of demonstrating that no genuine issue of material fact remains to be litigated, and that it is entitled to judgment as a matter of law. *Temple v. Wean United, Inc., supra,* 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *State ex rel. Zimmerman v. Tompkins, supra,* 75 Ohio St.3d 447, 663 N.E.2d 639. If the moving party meets this burden, the nonmoving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. *Id.*

---

1. Middleburg Heights Police received the 911 call in this matter at 4:04 a.m.

2. Some documents of record indicate a later time for completing the shift. See, *e.g.,* report of Officer Gavula.

Thus, as the movants herein, defendants were required to demonstrate that there were no genuine issues of material fact as to plaintiffs' claim that defendants negligently failed to provide adequate security. If defendants had met this burden, plaintiffs would then be required to produce evidence to show that there is a genuine triable issue.

As previously noted, defendants merely outlined their general security measures and did not demonstrate that these measures were undertaken with reasonable care on the night Doe was attacked. In opposition, plaintiffs presented evidence which, in my view, raised serious questions as to whether defendants' security efforts were undertaken with reasonable care on the night that Doe was abducted from a common area and raped. Accordingly, I cannot accept the majority's conclusion that the trial court properly awarded summary judgment to defendants on plaintiffs' claim that defendants failed to provide adequate security. I would reverse the judgment and remand the cause for further proceedings on this claim.