JOURNAL ENTRY AND OPINION
Defendants-appellants Lee A. Gettling and Lee A. Gettling, Inc., appeal from various judgments entered in favor of plaintiff-appellee Patricia Lavelle in this tort and breach of contract case. For the reasons adduced below, we affirm in part, reverse in part, and modify in part.
A review of the record on appeal indicates that defendants built, and sold on June 28, 1993, for $205,800, a townhouse for plaintiff located at 32 Nantucket Row in the City of Rocky River. On November 18, 1994, the corporate-plaintiff filed a replevin action against Lavelle seeking the return of a dehumidifier unit. Lavelle filed a counterclaim on November 18, 1994, against the Gettling corporation in the amount of $31,000 alleging breach of contract, breach of warranty, and false representations in connection with the sale of the townhouse property. See Lee A. Gettling, Inc. v. Patricia Lavelle, Rocky River Municipal Court Case No. 94-CVH-94190. Because the counterclaim's prayer for damages exceeded the monetary jurisdiction of the municipal court, the matter was transferred to common pleas court on December 1, 1994. See Lee A. Gettling, Inc. v. Patricia Lavelle, Cuyahoga County Common Pleas Court Case No. CV-281045. Lavelle filed an Amended Counterclaim on April 3, 1995, against the Gettling corporation re-alleging breach of contract, breach of warranty, and false representations in connection with the sale of the townhouse property. This Amended Counterclaim, at count V, contained an additional claim for the August 14, 1992 assault and battery by Gettling, personally.
On July 20, 1995, Lavelle filed a motion to join Gettling, personally, as a new-party so that he could respond to the Amended Counterclaim's claim for assault and battery. This motion to join was opposed by the Gettling corporation on August 1, 1995. The trial court, citing that there was no brief in support of joinder by Lavelle, denied the motion to join on August 24, 1995. Accordingly, with Gettling personally never having been joined as a party, the matter proceeded solely against the Gettling corporation.
On January 10, 1996, in the corporation's request to proceed as if on default, the corporate-plaintiff formally forfeited its claim for replevin, in effect voluntarily dismissing that claim with prejudice pursuant to Civ.R. 41(A)(1)(a). On the date scheduled for trial, Lavelle dismissed her Counterclaim, without prejudice, on February 16, 1996.
On September 6, 1996, Lavelle re-filed her Amended Counterclaim as the Complaint in the new action sub judice against Gettling's corporation and Gettling, in his individual capacity. See Cuyahoga County Common Pleas Court Case No. CV-314802. The Complaint alleged five counts[1]: (1) breach of contract with regard to the construction of the townhouse; (2) breach of warranty with regard to the construction of the townhouse; (3) fraudulent representations prior to the sale of the home; (4) breach of contract with regard to the payment of $140 in utility costs associated with the use of a dehumidifier unit in the basement of the townhouse; and, (5) tortious assault and battery in allegedly pushing Lavelle and dousing her with water from a garden hose on August 14, 1992. The defendants filed their joint Answer on October 3, 1996.
On November 5, 1997, pursuant to leave of court, Lavelle filed an Amended Complaint. As noted by the appellants in their brief at 7:
 Counts I, III, IV and V of the Amended Complaint were essentially identical to Counts I, III, IV and V of the original Complaint, except that the date of the alleged assault and battery (in Count V) was changed to August 14, 1994 and the amount allegedly owed plaintiff by defendant Lee A. Gettling, Inc. for the electrical cost of using the dehumidifier (Count IV) was increased to Eight Hundred Dollars ($800.00). Count II, however, was changed from a claim of breach of express warranty to a claim of fraud on the part of defendant Lee A. Gettling, Inc., tracking the language of Count III * * *. The Amended Complaint also added a new count Count VI, for intentional infliction of emotional distress * * *.
This intentional infliction of emotional distress claim was premised upon the alleged assault and battery having been committed in the presence of a number of people; the presence of an audience allegedly causing emotional distress in Lavelle.
On November 19, 1997, defendants filed a joint Answer and Counterclaim to Lavelle's Amended Complaint. Lavelle filed an Answer to the Counterclaim on December 17, 1997.
In February of 1998, Lavelle sought to depose Mr. Gettling and obtain documents on March 26, 1998. In response, Gettling filed a motion for a protective order on March 25, 1998; the trial court denied this motion for protective order on the day it was filed, and ordered Gettling to appear at the deposition duces tecum scheduled for the following day. At a subsequent pre-trial hearing on May 13, 1998, the court noted that Gettling still refused to attend his deposition. Also on May 13, 1998, Lavelle filed a motion seeking a nunc pro tunc entry by and for January 10, 1996, recognizing the dismissal of Gettling's Counterclaim for the value of the dehumidifier as that claim, one previously asserted for replevin, was dismissed with prejudice on January 10, 1996, in the prior action. In light of this obstinacy by Gettling regarding discovery, the trial court ordered the following at the pre-trial, court informed deft that should deft fail and continue to fail to comply with pltf's discovery requests then deft will be precluded from presenting a defense in accordance with the civil rules; compliance with Local Rule 21 is required, trial set for 6/17/98 at 9:00 a.m. Journal Vol. 2215, page 146, journalized May 14, 1998.
On June 6, 1998, the trial court granted Lavelle's unopposed motion for a nunc pro tunc entry.
On June 10, 1998, one week prior to the commencement of the scheduled trial, Lavelle filed a motion for judgment by default and for sanctions. On June 16, 1998, Gettling filed a motion to dismiss Lavelle's Complaint for allegedly not completing or supplementing discovery requests concerning the documentation of damages. Lavelle filed her opposition to dismissal on June 23, 1998.
On July 8, 1998, in addition to denying Gettling's motion to dismiss filed on June 16, 1998, the trial court clarified its order of May 14, 1998, as follows:
 Because of non-appearance, deft is precluded from presenting any witnesses at damages trial and is limited to cross-examination of pltf's witnesses only. Judgment is rendered in favor of pltf against deft in amount to be determined by jury.
Journal Vol. 2235, pages 16 and 158.
On October 28, 1998, the trial court ordered the following:
 Per this court's order dated 5-14-98, defts Lee Gettling Inc. deft Lee A. Gettling, by and through counsel was warned that continued non-participation in discovery or any of these proceedings would result in an order precluding defts from presenting a defense pursuant to C.R. 37: Notwithstanding the above order, deft refused continues to refuse to submit to deposition duces tecum. Further, on 4-28-98 defts filed a notice of non-appearance at trial . . . Pltf's 6-10-98 mtn for default is grtd, that jdgmt. is rendered in favor of pltf Lavelle agst the defts, jointly severally defts being Lee Gettling Inc. 
Lee Gettling in an amt. to be determined by a jury on all counts of pltf's complaint, 6-10-98 sanctions mtn filed by pltf to be heard after damages trial.
Journal Vol. 2274, page 193.
The jury trial, on damages only, commenced on October 28, 1998, and ended on October 30, 1998. The jury returned verdicts in favor of Lavelle against defendants in the following amounts totaling $375,969: (1) against Lee Gettling on the tort claim for assault and battery ___ $50,000 in compensatory damages and $50,000 in punitive damages, plus attorney fees; (2) against both defendants on the tort claim of fraud ___ $50,000 in compensatory damages and $50,000 in punitive damages, plus attorney fees; (3) against Lee Gettling on the tort claim of intentional infliction of emotional distress ___ $50,000 in compensatory damages and $100,000 in punitive damages, plus attorney fees; (4) against both defendants, jointly and severally, on the breach of contract claim — $25,969 in compensatory damages. See Journal Vol. 2276, pages 194-196, journalized November 3, 1998.
Defendants filed their notice of appeal on December 1, 1998 from the November 3, 1998 judgment. See Lavelle v. Lee A. Gettling, Inc., et al, Cuyahoga App. No. 75625.[2]
On December 21, 1998, defendants filed a notice of bankruptcy.
On September 1, 1999, the trial court, noting that no appeal or bankruptcy stay was then pending, reactivated the case to its docket and scheduled pending motions (for prejudgment interest, attorney fees, and costs) for oral hearing on September 24, 1999. Subsequent to this hearing, which failed to resolve the pending motions, the matter was scheduled for a settlement conference for October 10, 1999, at which time the pending motions would be resolved in the event no settlement could be achieved. The October 10, 1999 hearing date was later rescheduled to November 27, 1999, to be conducted at the offices of the Cleveland Bar Association.
On February 19, 2000, the trial court entered an extensive order granting prejudgment interest (in the amount of $80,715.81) on the compensatory damages, granting attorney fees in the amount of $78,198.50, and granting costs in the amount of $100 (representing the filing fee for the Complaint; the remaining claimed costs of $3,400 was denied). See Journal Vol. 2430, pages 634-661.
Defendants filed the notice of appeal sub judice on March 1, 2000. Nine assignments of error are presented for review.
 I THE COMMON PLEAS COURT ERRED IN ENTERING DEFAULT JUDGMENT ON COUNT V OF THE AMENDED COMPLAINT, SINCE SAID COUNT, ON ITS FACE, DID NOT STATE A VALID CLAIM FOR RELIEF.
In this assignment, appellants argue that the claim for assault and battery (involving the pushing of Lavelle and spraying her with a garden hose) which was alleged to have occurred on August 14, 1994, was barred due to the statute of limitations having expired.[3] Thus, appellants argue that this tort claim was not filed prior to August 14, 1995.
The record indicates that the assault and battery claim was first filed against Gettling personally, in Lavelle's April 3, 1995, Counterclaim in the prior action which was transferred from the municipal court. See Cuyahoga County Common Pleas Case No. CV-281045. This Counterclaim was voluntarily dismissed by Lavelle on February 16, 1996. Pursuant to R.C.2305.19, popularly known as Ohio's savings statute, Lavelle could get the benefit of the savings statute and commence a new action within one year of that voluntary dismissal if the prior action was commenced, or attempted to be commenced, and the prior action failed otherwise than on the merits. There is no question that the prior action failed otherwise than on the merits since it was voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a) after the expiration of the statute of limitations. See Costell v. Toledo Hospital (1988), 38 Ohio St.3d 221 . However, the question remains whether the prior action (i.e., the Counterclaim against Gettling the individual) was commenced, or attempted to be commenced pursuant to R.C. 2305.17 and .19 for the invocation of the one-year savings statute and resultant tolling of the statute of limitations.
R.C. 2305.17, which defines the commencement of an action, provides:
 An action is commenced within the meaning of sections 2305.03 to 2305.22 and sections 1302.98 and 1304.35 of the Revised Code by filing a petition in the office of the clerk of the proper court together with a praecipe demanding that summons issue or an affidavit for service by publication, if service is obtained within one year. (Italicization added.)
In that prior action, case number CV-281045, there is no indication on the record that Lavelle commenced, or attempted to commence, her counterclaim action against Mr. Gettling, a non-party to that action, by attempting, let alone obtaining, service of process or issuance of summons upon Gettling, the individual. See Civ.R. 3(A), 4, 4.1, 4.2(1), 4.3. The only step Lavelle took in this regard was to file a motion to join Mr. Gettling as a party and serve that motion on the trial counsel representing the Gettling corporation; this is not equivalent to the issuance of praecipe for summons with a copy of the counterclaim upon the non-party Mr. Gettling, personally. Having failed to commence, or attempt to commence, the assault and battery action against Mr. Gettling in the prior action, the one-year savings statute does not apply. Accordingly, the prior action purportedly against Mr. Gettling, personally, failed due to lack of commencement, and the subsequent filing of the assault and battery claim in Lavelle's Complaint of September 6, 1996, would normally be time-barred.
This does not end our analysis. Appellee argues that the affirmative defense of statute of limitations was waived by the defendants in case number CV-314802. The affirmative defense of statute of limitations may be asserted by motion before pleading pursuant to Civ.R. 12(B), affirmatively asserted in a responsive pleading pursuant to Civ.R. 8(C), or in an amendment to that responsive pleading pursuant to Civ.R. 15; otherwise, that defense is waived pursuant to Civ.R. 12(H). See Hoover v. Sumlin (1984), 12 Ohio St.3d 1. In the case sub judice, the defense of statute of limitations was not presented by motion prior to pleading, or stated affirmatively in Gettling's Answer. However, as argued by appellees, Gettling attempted to preserve this defense when he filed on July 14, 1998, a motion to amend his Answer in order to assert that affirmative defense. This motion, which was opposed by Lavelle on July 24, 1998, was denied by the trial court on September 22, 1998. See Journal Vol. 2260, page 635. Appellees, having taken issue with the propriety of the trial court's denial of the motion to amend the Answer in order to assert the affirmative defense of statute of limitations, requires us to review the trial court's action in this regard.
This court recently provided the following with regard to the amendment of a pleading:
 The amendment of pleadings is governed by Civ.R. 15(A), which provides:
 A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.
Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely granted when justice so requires." However, while the rule allows for liberal amendment, motions to amend pleadings pursuant to Civ.R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 465 N.E.2d 377, paragraph two of the syllabus.
In Doe v. Flair Corp. (1998), 129 Ohio App.3d 739, 749, 719 N.E.2d 34, this Court stated:
 It is well established that the decision to grant or deny a motion for leave to file an amended complaint is well within the sound discretion of the trial court and such decision will not be disturbed on appeal absent an abuse of that discretion. Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 573 N.E.2d 622; Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175, 63 Ohio Op. 2d 262, 269-270, 297 N.E.2d 113, 121-122. The term "abuse of discretion" connotes more then an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Mortimore v. Mayfield (1989), 65 Ohio App.3d 450, 584 N.E.2d 770.
Serrano v. McCormack Baron Mgmt., Inc. (Dec. 7, 2000), Cuyahoga App. No. 77970, unreported, 2000 Ohio App. LEXIS 5707, at 7-9. Also see Turner v. Central Local School District (1999), 85 Ohio St.3d 95 (motions to amend pleadings pursuant to Civ.R. 15[A] should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party).
In the instant case, the motion to amend the Answer was filed on July 14, 1998, approximately eight months following the filing of the Amended Complaint and the Amended Answer, one week following the continuance of the trial date upon Lavelle's motion so as to permit further discovery, and three-and-one-half months prior to the rescheduled trial date. However, the motion to amend was filed approximately one week after the trial court granted judgment on July 8, 1998, in favor of Lavelle and limited defendants to cross-examination of plaintiff's witnesses as a sanction for not complying with discovery.[4] Based upon this sanction, which precluded defendants from offering a defense to the claims, the motion to amend can be categorized as having been made in bad faith since defenses were no longer viable. Accordingly, the trial court did not abuse its discretion in denying the motion to amend.
The first assignment of error is overruled.
 II THE COMMON PLEAS COURT ERRED IN ENTERING DEFAULT JUDGMENT WITH RESPECT TO COUNT VI OF THE AMENDED COMPLAINT, SINCE SAID COUNT, ON ITS FACE, DID NOT STATE VALID CLAIMS FOR RELIEF.
This assignment takes issue with the tort claim regarding the intentional infliction of emotional distress. The basis for this assignment is the same as that advanced in the first assignment of error that the one-year statute of limitations provided by R.C. 2305.111 for the tort claim had expired. Based on the same analysis as set forth in the first assignment, this assignment is likewise without merit.
The second assignment of error is overruled.
 III THE COMMON PLEAS COURT ERRED IN ENTERING DEFAULT JUDGMENT ON COUNTS II AND III OF THE AMENDED COMPLAINT, SINCE SAID COUNTS, ON THEIR FACE, DID NOT STATE VALID CLAIMS FOR RELIEF.
This assignment argues that the Amended Complaint claims for fraudulent representations by the defendants made [p]rior to the sale of the home concerning the installation and workmanship of various systems in the home (to-wit, flooring, sub-flooring, floor joists, foundation walls, windows and sills, concrete in the driveway and garage, and plumbing fixtures), that the foundation did not leak, and that the plumbing would not leak, did not state valid claims for relief because these representations, made prior to the sale of the home and which allegedly induced Lavelle to execute the purchase agreement, came within the scope of the integration clause contained within the purchase agreement, barring claims based on representations made prior to the execution of the purchase agreement and whose terms were outside that purchase agreement. See Amended Complaint at counts II and III. Appellee admits that the representations of which she testified at trial, which formed the basis for these two claims, concerned representations and promises by Gettling made subsequent to the execution of the purchase agreement, during a final walk-through inspection of the property in September of 1993. See Appellee brief at 20, 22.
The purchase agreement (which was executed by Lavelle on June 28, 1993, and executed by Gettling in his corporate capacity on June 29, 1993), a copy of which is attached to the Amended Complaint, provides the following integration clause:
 REPRESENTATIONS AND WARRANTIES. SELLER certifies that there are no citations filed by local authorities alleging violations of any zoning ordinances and/or building codes of the municipality in which the property is situated as of the date of this Agreement, and that all appliances and mechanical components will be in operating condition when title is transferred. Excepting only those representations contained in the preceding sentence, BUYER specifically agrees and represents that BUYER has made a full and complete inspection of the property being purchased, that there are no representations, warranties or statements, written or oral, concerning the condition of the premises, the value of same, the use to which it may be put, or anything concerning the same other than those agreements and representations contained in writing in this Agreement. BUYER has full opportunity, at BUYER'S expense, to cause any inspections of such property as BUYER desires, and BUYER is purchasing such property in as is condition, taking full responsibility for the condition of such property as of the date of this Agreement upon the representation of SELLER that there has been no material and substantial change in condition of said property between BUYER'S last inspection and the date of this Agreement. (Italicization added.)
Whatever the subject of these subsequent, post-execution of the purchase agreement representations by Gettling, they are irrelevant to the allegations posited in counts II and III of the Amended Complaint; the fact remains that Lavelle's Amended Complaint alleged that fraudulent representations made prior to, not subsequent to, the execution of the purchase agreement induced her to purchase the property. In fact, it is impossible to imagine that representations made subsequent to the execution of a purchase agreement constituted the inducement to enter into a purchase agreement which, by that point in time, had already been executed. In any event, the integration clause, through the application of the parol evidence rule, would act to bar testimony concerning representations made prior to the execution of the purchase agreement and which would contradict the integrated written agreement. See Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 30, citing Alling v. Universal Mfg. Corp. (1992), 5 Cal.App.4th 1412, 1436. Accordingly, the trial court erred in granting judgment on these two claims and they are necessarily vacated and reversed.
The third assignment of error is affirmed.
 IV THE JURY AWARDS OF $50,000 COMPENSATORY DAMAGES AND $100,000 PUNITIVE DAMAGES FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VI) WERE IMPROPER, SINCE THE EVIDENCE PRESENTED AT THE DAMAGES TRIAL WAS LEGALLY INSUFFICIENT TO PERMIT ANY SUCH AWARDS.
In this assignment appellants argue that the evidence at trial did not support the damages awarded for the tort claim of intentional infliction of emotional distress.
As noted by appellants, Burkes v. Stidham (Cuyahoga, 1995),107 Ohio App.3d 363, 375, provides the elements for the tort of intentional infliction of emotional distress:
 A claim for intentional infliction of emotional distress requires proof of the following elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it. Ashcroft v. Mt. Sinai Medical Ctr. (1990), 68 Ohio App.3d 359, 588 N.E.2d 280. Serious emotional distress requires an emotional injury which is both severe and debilitating. Paugh v. Hanks (1983), 6 Ohio St.3d 72, 451 N.E.2d 759. Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, used the description of extreme and outrageous conduct found in Restatement of the Law 2d, Torts (1965) 71, Section 46, which stated:
 "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, Harvard Law Review 1033, 1053 (1936). * * *"
 6 Ohio St. 3d at 374-375.
As previously indicated, the event which formed the basis for this cause of action was Lavelle being pushed slightly and sprayed, very briefly, with a garden hose by Gettling in 1994. Lavelle detailed this encounter in her direct examination trial testimony at Tr. 507-510, recounting her going to meet Gettling so as to complain about a water leak in her family room ceiling during a rain storm, as Gettling worked with a garden hose outside a nearby townhouse in the same development,:
 Q. And what happened when you went down there? What did you say to Mr. Gettling?
 A. I had asked him to please come down while it was raining, because he would be able to see the water dripping through the family room ceiling.
 Q. Was he paying any attention to you or ignoring you or what was he doing during this time?
 A. He was paying attention to me, because he said that he had his laborers look at it, and there was no problem.
Q. What did you say?
 A. That's when I began pleading for him to come down and see it while it was actually dripping through the ceiling.
 Q. Did you tell him that water was dripping down on your daughters' heads?
A. Yes.
Q. How did Mr. Gettling respond?
 A. He gave me a push, pushed me up against my chest, and told me to get out of there. When I continued to plead, he turned the garden hose on me.
* * *
 A. He went like this (indicating), and told me to leave, to get out of his face.
 Q. Did he use any bad language at you at that time?
A. Just normal little shit routine.
 Q. Just the normal. So you got used to hearing that from him?
A. That was his attitude, that's the way I took it.
Q. How do you feel being called a little shit ?
A. It was very embarrassing and humiliating.
 I am a woman that worked hard for everything that I have. I feel I deserve the same respect that everyone else should have.
* * *
 Q. And how far away were you from Mr. Gettling when this occurred?
 A. Well, when he gave me the shove, I backed up a bit. * * *.
Q. Were there other people watching this?
 A. Mr. Gettling's wife was there, and the Realtor, Mr. Hardacy.
Q. Any neighbors see this?
 A. The older woman across the way, her son and her daughter-in-law.
 Q. When he turned the hose on you, how far away was he from you?
A. Not very far, because he soaked me.
Q. But what were you wearing?
 A. Just a tee shirt and a pair of shorts. It was August.
 Q. And where did he spray the water on you; on your foot, your shoe?
 A. No, my tee shirt was dripping. The vast majority of the area was the tee shirt.
 Q. What were you saying to him while he's doing this to you?
 A. I became angry. I told him I was going to make a police report.
On cross-examination, see Tr. 609-611, Lavelle continued her recitation of the event:
Q. You went to find Mr. Gettling, didn't you?
A. I went to speak to him, yes.
Q. You went after him?
A. I went to speak to him.
 Q. And when you got to him, you started complaining to him, is that right?
A. I asked him to come down and see the roof.
Q. And you got right up in his face, didn't you?
A. No.
Q. How far away were you?
A. Into his face, no.
Q. How far away were you?
A. Enough for him to push me.
* * *
Q. You were hollering at him, weren't you?
A. No, sir.
Q. Just politely talking?
 A. I asked him to come down and see the water coming through the roof.
Q. And he said no?
A. He didn't come.
Q. And you kept at him, didn't you?
 A. He said there was nothing wrong with the roof, and all I wanted him to do was see the water coming through at the time.
 Q. And you wouldn't leave with that, would you? When he said no or wouldn't come, you still wouldn't leave? You stayed within arm's length of him, right?
A. Yes.
Q. And you got closer?
A. No.
Q. He asked you to get out of his face, didn't he?
 A. Those were his words, but I was still within arm's reach.
 Q. But he asked you to back off, whether it's get out of his face or whatever, he asked you to get away from him, right?
A. Yes.
Q. And you didn't do that, did you?
A. I asked him to come down and see our home.
Q. You didn't get away from him, did you?
A. No.
Q. So he pushed you back, right?
A. Yes.
Q. And apparently, he had a hose?
A. Yes.
Q. And he sprayed you?
A. Yes.
Q. And how long did that spraying last?
A. A few seconds, enough to soak me.
Q. Just a couple of seconds, right?
A. Enough to soak me.
On cross-examination, Lavelle also admitted that: (1) she had made a police report relative to the incident; (2) the authorities made a decision not to prosecute; (3) in the police report she stated I was not injured from the incident and that the push did not bruise her or make her fall; (4) her anger stemming from the incident manifested itself in her making a police report (My anger was being there [at the police station]. [Explanation added.]). See Tr. 612-617. Lavelle did not call any of the alleged witnesses to this pushing/hosing to testify, and did not note any emotional or physical injury to the police immediately following the incident. Lavelle also did not seek any medical or psychological treatment or counseling whatsoever as a result of this brief, but no doubt, embarrassing and frustrating, incident. See DiCapo v. Ahmed (June 4, 1998), Cuyahoga App. No. 72505, unreported, 1998 Ohio App. LEXIS 2415, at 12, citing Paugh v. Hanks, supra (serious emotional distress describes a mental injury that is severe and debilitating, going beyond trifling mental disturbance, mere upset or hurt feelings), and Kneif v. Minnich (1995), 103 Ohio App.3d 103, 108 (although expressing anger and frustration, the claim for emotional distress was not demonstrated where the victim failed to seek medical or psychological treatment or counsel in order to cope with their frustration). Lacking evidence of a severe and debilitating injury to her psyche, demonstrating significant changes in the emotional or habitual makeup of the appellee, see Uebelacker v. Cincorn Systems, Inc. (1988),48 Ohio App.3d 268, 276, the trial court erred in denying appellants' motion for a directed verdict on the claim of intentional infliction of emotional distress. Accordingly, the damages awarded for this claim are reversed and vacated.
The fourth assignment of error is affirmed.
 V THE JURY AWARDS OF $50,000 COMPENSATORY DAMAGES AND $50,000 PUNITIVE DAMAGES FOR ASSAULT AND BATTERY WERE CLEARLY EXCESSIVE (COUNT V).
Appellants argue that the damages were excessive in light of the fact that Lavelle sustained no physical injury and the duration of the dousing was two seconds. In effect, appellants contend that the award was the product of passion or prejudice and was lacking evidentiary support.
 In determining whether passion or prejudice impacted upon a jury's damage award to the point of necessitating a new trial, a reviewing court must consider the amount of the award and whether the damages were induced by (1) incompetent evidence, (2) misconduct by the court or counsel at trial, or (3) any other action at trial which may reasonably be said to have swayed the jury. Shelton v. Greater Cleveland Regional Transit Auth. (1989), 65 Ohio App.3d 665, 682, 584 N.E.2d 1323; Loudy v. Faries (1985), 22 Ohio App.3d 17, 19, 488 N.E.2d 235. In addition, even if the verdict in question was not influenced by passion or prejudice, a trial or reviewing court may reduce the verdict by remittitur if it is excessive and unwarranted by the evidence presented. Cox v. Oliver Machinery Co. (1987), 41 Ohio App.3d 28, 534 N.E.2d 855.
Sheets v. Norfolk Southern Corp. (1996), 109 Ohio App.3d 278, 292.
In the action sub judice, we conclude that the award for the claim of assault and battery was clearly excessive and the result of an appeal to passion and prejudice. As previously indicated, the garden hose incident produced no physical injury and no severe and debilitating emotional trauma. The duration of the dousing was very brief, approximately two seconds, and the pushing action was slight, causing Lavelle to back up one step, but not strong enough to convince Lavelle to leave the area or knock her down or seriously off-balance. The award can only be justified when one views the testimony which repeatedly attempted to portray Gettling to the jury as a heartless and condescending real estate developer who cavalierly, and unjustifiably, dismissed Lavelle's concerns and took advantage of her situation by rendering shoddy service, and humiliated her by referring to her as a shit, while depicting Lavelle as just a hard-working person, who had lost her husband to cancer, and was battling this uncaring force in a reasoned and restrained manner to achieve justice for herself and her two teenaged daughters. This is not to say that some compensation may be warranted on this claim as compensatory damages, or that punitive damages may be warranted to deter a person from committing battery by dousing a fellow citizen with water from a garden hose; we merely recognize that the award on this claim is extraordinarily magnified under the facts presented in the record. Accordingly, the awards for the claim of assault and battery are reversed and vacated.
The fifth assignment of error is affirmed.
 VI THE JURY AWARDS OF $50,000 COMPENSATORY DAMAGES AND $50,000 PUNITIVE DAMAGES WITH RESPECT TO PLAINTIFF'S CLAIMS FOR FRAUD (COUNTS II AND III) WERE NOT SUPPORTED BY EVIDENCE AND WERE CLEARLY EXCESSIVE.
As stated in the discussion of appellants' third assignment of error, supra, the tortious claims of fraud were premised upon representations occurring prior to the sale of the home; to induce the sale of the townhouse. Having reversed and vacated the judgment on these two claims of fraud due to the application of the integration clause within the purchase agreement, the damages awarded thereon must likewise be reversed and vacated. See the third assignment of error, supra.
The sixth assignment is affirmed.
 VII THE COMMON PLEAS COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEYS' FEES TO PLAINTIFF.
Having reversed and vacated the judgments and awards pertaining to the claims based on tortious conduct (assault and battery, fraud, and intentional infliction of emotional distress), the determination to award attorney fees, which was based upon the presence of punitive damages related to the finding of tortious conduct, must necessarily be reversed and vacated, as well. See Griffin v. Lamberjack (1994), 96 Ohio App.3d 257,266 (attorney fees are inapplicable in the absence of a punitive damage award).
The seventh assignment of error is affirmed.
 VIII THE JURY AWARD OF DAMAGES WITH RESPECT TO COUNT I OF THE COMPLAINT MUST BE SET ASIDE BECAUSE PLAINTIFF FAILED TO PRESENT ANY EVIDENCE AS TO DIMINUTION IN MARKET VALUE.
This assignment argues that the $25,969 damage award for count I, breach of contract and implied warranty of workmanship, cannot stand because Lavelle did not offer evidence of the pre-injury and post-injury market value of the property. In other words, the proper measure of damages according to appellants was the diminution of value of the property.
The proper measure of damages involving defectively constructed new homes is the cost of remedying the defect, not diminution of value. See Ballard v. Biskind (Dec. 19, 1985), Cuyahoga App. No. 49805, unreported, 1985 Ohio App. LEXIS 9691, at 16-17, citing Daniels v. Albert J. Corey Co. (1965), 2 Ohio App.2d 297; see, also, Sims v. Cleveland Builders Corp. (Mar. 23, 1989), Cuyahoga App. No. 55153, unreported, 1989 Ohio App. LEXIS 1003.
The eighth assignment of error is overruled.
 IX THE COURT BELOW ABUSED ITS DISCRETION IN AWARDING PREJUDGMENT INTEREST.
Lavelle's motion for prejudgment interest was made pursuant to R.C. 1343.03(C), which states:
 (C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case. (Italicization added.)
Having reversed and vacated the awards based on the tortious conduct claims, the prejudgment interest award based on tortious conduct claims must also be reversed and vacated.
Thus, Lavelle is due only statutory prejudgment interest on the breach of contract claim award pursuant to R.C. 1343.03(A), at the rate of ten percent annually from the date of the accrual of the claim to the date of judgment. See Royal Electric Construction Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, syllabus. This presents a problem not addressed by the parties, but which is hereby addressed as plain error. The trial court in the action sub judice, in its opinion and entry dated February 16, 2000, awarded prejudgment interest from the date of the filing of the original counterclaim, November 18, 1994 to the date of judgment, November 3, 1998 . . . (Italicization added.) The problem is evident; the ten percent interest should have run from the accrual of the breach of the contract claim, yet the trial court ordered that the prejudgment interest commence on the date the Counterclaim was filed in the municipal court action. Certainly, the accrual of the breach of contract claim occurred prior to this filing of the Lavelle Counterclaim, at its earliest June 28, 1993 (the date the purchase agreement was executed by Lavelle), and at its latest November 18, 1994 (the date the Counterclaim was filed by Lavelle in the municipal court action). Given that Lavelle's evidence contended that the construction was faulty from the outset when the foundation was poured and the basement improperly waterproofed (which was only one item in the poor workmanship of the builder of this property), we will use the date of the execution of the purchase agreement (June 28, 1993) as the accrual of the breach of contract action. Accordingly, the award of prejudgment interest is modified to reflect ten percent (10%) interest on the amount of $25,696 (the award for the breach of contract claim) from June 28, 1993, to the date of judgment, November 3, 1998.
The ninth assignment of error is affirmed as modified.
To summarize: (1) the awards for the tortious conduct claims are reversed and vacated; (2) the award of attorney fees based upon the tortious conduct is reversed and vacated; (3) the award of prejudgment interest pursuant to R.C. 1343.03(C) for the tortious conduct claims is reversed and vacated; (4) the prejudgment award for the breach of contract claim is modified; (5) the award for costs and breach of contract remains in effect.
Judgment affirmed in part, reversed in part, and modified in part.
This cause is affirmed in part, reversed in part and modified in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________________ JAMES D. SWEENEY, JUDGE
TIMOTHY E. McMONAGLE, P.J., and PATRICIA A. BLACKMON, J. CONCUR.
[1] These counts were previously raised in the Lavelle Counterclaim in Cuyahoga County Common Pleas Court Case No. CV-281045.
[2] This appeal was dismissed on July 1, 1999, upon Lavelle's motion alleging a lack of a final appealable order.
[3] See paragraph 25 of the Amended Complaint, and R.C. 2305.111 which imposes a one-year statute of limitations for the tort of assault and battery.
[4] Significantly, appellants have not raised the argument on appeal that the trial court abused its discretion in granting a default judgment as the appropriate sanction for having abused the discovery process.