SAYLES et al., Appellants,

v.

SB–92 LTD. PARTNERSHIP, d.b.a. Shaker Boulevard Apartments, Appellee.

[Cite as *Sayles v. SB–92 Ltd. Partnership* (2000), 138 Ohio App.3d 476.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76507.

Decided July 17, 2000.

*Sunny M. Simon* and *David A. Corrado*, for appellants.

*Rawlin, Gravens & Franey Co., L.P.A.,* and *Terrance P. Gravens,* for appellee.

PORTER, Judge.

Plaintiffs-appellants Stacy Sayles and her minor son appeal from a summary judgment entered in favor of defendant-appellee SB–92 Ltd. Partnership, an apartment owner, arising out of injuries sustained by the plaintiffs when they leapt from the third story apartment window to escape a fire deliberately set by a female acquaintance stalking Sayles. Plaintiffs claim the trial court erred in holding that the statute of limitations barred their claim and that genuine issues of material fact precluded the summary disposition of their claims. We affirm for the reasons hereinafter set forth.

In February 1990, plaintiff Stacy Sayles and her one-year-old son Brandon moved into the Shaker Garden Apartments on East 108th Street in the Buckeye Road/Shaker Boulevard area of Cleveland. For several years police were routinely called to investigate drug dealing and unruly teenagers on the property. In 1994, she learned that there was a change in management that began to make renovations to the property. She recalled that as part of this renovation, new exterior doors were installed on the buildings in the spring and summer of 1994 in response to complaints of the tenants that the old door had faulty locks. Stacy claimed that the newly installed front door still did not lock properly, which she brought to the attention of the apartment management.

In July 1994, Stacy became "reacquainted" with Brenda Johnson through a mutual friend at a bar called the Lenroc on Miles Road. Thereafter, Stacy started seeing Brenda at a number of different gay bars downtown. In the late summer and early fall of 1994, Brenda started pursuing Stacy. Initially, Stacy tried just to talk to Brenda and listen to her problems, but Brenda started telephoning all the time and sent her flowers at work. Brenda also began leaving gifts and cards

at Stacy's apartment door and with one of her neighbors. Around this same time, the windows of Stacy's car were broken out on three separate occasions.

In mid to late September 1994 after Stacy refused to be Brenda's girlfriend, Brenda started leaving threatening voicemail messages saying if she "couldn't have her, nobody else could." Stacy consulted a friend of hers who was a Cleveland police officer. After talking with her first, Stacy went to the Cleveland Police Department in September and October 1994 and filed incident reports regarding her car and a stalking report regarding Brenda. Stacy also unsuccessfully sought to obtain a restraining order against Brenda. Stacy also received threatening telephone calls from Brenda that "she'll make my life miserable, she'll kill me, she'll have me F'd up, different things, her sister would get me, her family, just all kind of stuff. You know, I know where you are, I know everything about you."

A few days before October 17, 1994, Stacy had a "fiery conversation" with Brenda in which she told her "stop calling me, I'm going to call the police on you." Brenda responded, "[i]f I can't have you, nobody else will. I love you. Why are you doing this to me? Don't you know I'll kill you?"

On the evening of October 17, 1994, when Stacy arrived at her apartment, she saw Johnson at the apartment and became concerned. She went immediately to the Fourth District Police Station to report that her stalker was at her apartment. After waiting a few hours, Stacy got a page from her apartment neighbor, Debra Burks, who told her that Brenda had just driven by the building and thrown a firebomb at the building that started a fire in the grass. After Stacy hung up the phone, she became "real upset" and had to be calmed down by the police officers. The officers then talked to Stacy about the situation and drove her back to her apartment complex.

When she arrived at the apartment complex, the fire department was there. She showed the fire officials the letters and other information about the previous problems with Brenda. She saw footprints on her front door, where someone had tried to kick it in and the spot on the building where the firebomb had hit. She also saw where the firebomb had left a large burned-out area in the grass. At approximately 1:00 a.m. on October 18, 1994, the fire department officers finally left the property. Before leaving, they gave her an emergency number to call "if anything happens." One of the fire officials asked her if she thought she should spend the night somewhere else. However, even though Stacy's mother and grandmother both lived in the Cleveland area, she declined to leave because she had to go to work the next day and her son had to go to school.

Thereafter, she stayed up talking to her friends in her apartment until about 2:00 or 3:00 a.m. After they left, Stacy talked to other friends on the phone in a three-way conversation. As she was talking to these friends on the telephone,

she looked out the window and saw Brenda circling the property in her car. Brenda circled the property for several hours. Stacy was scared and peered out the window with all the lights off in her apartment until she did not see Brenda anymore. Stacy remained on the phone with her friends and did not call the police or fire department or the on-site maintenance people at the emergency telephone number. At approximately 4:15 a.m., Stacy fell asleep with the telephone to her ear.

At 4:30 a.m., the smoke alarm went off. Stacy ran from her bedroom into the next room and saw that the front door of her apartment suite was on fire. She panicked and yelled out the window for help, but no one responded. Stacy then woke up Brandon and prepared him to jump out the window. She kicked the screen out and jumped out the window first. Brandon followed her lead and jumped after her. She partially caught him, breaking his fall. As a result of the fall, both Stacy and Brandon sustained injuries.

Eventually, Brenda Johnson was arrested, indicted, and pled guilty to two counts of arson at the apartment. *State v. Brenda Johnson,* C.P. No. CR–319781. On October 4, 1996, plaintiffs filed suit against their landlord, Shaker Boulevard Gardens, C.P. No. 316374, alleging that the landlord's negligence in failing to provide adequate security to the apartment was the proximate cause of their injuries. Plaintiffs' principal complaint was that the locks on the apartment's front door did not work properly and that the landlord failed to make the requisite repairs to the door. After discovery, this case was voluntarily dismissed without prejudice on June 5, 1997, after the two-year statute of limitations for bodily injury (R.C. 2305.10[A]) had expired on October 18, 1996.

Plaintiffs changed counsel and refiled their claims on June 5, 1998 (C.P. No. 356966) under the one-year savings statute (R.C. 2305.19). Subsequently, on January 11, 1999, plaintiffs filed an amended complaint, naming for the first time SB–92 Ltd. Partnership as the landlord and only defendant. Shaker Boulevard Gardens, the original named defendant, was apparently a fictitious name under which SB–92 operated the apartment through its managing agents, Independent Management Services, Inc. Defendant SB–92 maintained below on summary judgment and here, as well, that the statute of limitations bars suit against it because the savings statute did not preserve plaintiffs' claims. The parties have devoted substantial parts of their briefs to arguing that issue. However, we do not find it necessary to address that issue in view of our disposition of this appeal on other grounds.

We will address plaintiffs' Assignment of Error II first because we find it is dispositive of the appeal.

"II. The trial court erred when it entered summary judgment in favor of defendant SB–92 since genuine issues of material fact remain to be litigated."

Plaintiffs assert that the trial court erred in awarding summary judgment to the defendant landlord because genuine issues of material fact exist as to whether the defendant's negligence in failing to repair the door was the proximate cause of plaintiffs' injuries. We disagree.

Appellate review of summary judgments is *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245; *Zemcik v. LaPine Truck Sales & Equip.* (1998), 124 Ohio App.3d 581, 585, 706 N.E.2d 860, 863–864. The Ohio Supreme Court recently restated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204 as follows:

"Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274."

Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

The legal issue we must confront on this assignment of error is whether the landlord can be held liable for the extraordinary chain of events leading to plaintiffs' injuries. More specifically, the issue is whether the landlord had a duty to take measures that would have prevented the stalker from visiting vengeance on the unfortunate plaintiffs. That, in turn, depends on the foreseeability of the criminal acts from the totality of the circumstances. We find, for the reasons hereinafter stated, that the landlord did not owe a duty to the plaintiffs in the peculiar circumstances of this case.

This court recently addressed a landlord's liability for criminal acts injuring its tenants in *Jane Doe v. Beach House Dev. Co.* (2000), 136 Ohio App.3d 573, 737 N.E.2d 141, where we quoted from *Jane Doe v. Flair Corp.* (1998), 129 Ohio App.3d 739, 719 N.E.2d 34, as follows:

" 'In order to establish a claim for negligence, a plaintiff must establish a duty owed by the defendants, a breach of that duty which proximately results in an injury. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142 [539 N.E.2d 614, 616–617]. As a general rule, landlords have no duty to protect their tenants from the criminal acts of third persons. *Thomas v. Hart Realty, Inc.* (1984), 17 Ohio App.3d 83, 86 [17 OBR 145, 147, 477 N.E.2d 668, 671]; *Sciascia v. Riverpark Apts.* (1981), 3 Ohio App.3d 164, 166 [3 OBR 188, 190–191, 444 N.E.2d 40, 42–43]; *Johnson v. Monroe Realty Co.* (May 25, 1995), Cuyahoga App. No. 67964, unreported [1995 WL 322278]. The duty of a landlord in such cases was set forth in *Carmichael v. Colonial Square Apartments* (1987), 38 Ohio App.3d 131 [528 N.E.2d 585]. *Carmichael* dealt with a tenant who had been assaulted in his own apartment and brought suit against his landlord alleging that he was negligent in failing to provide adequate security in the common areas of the building. The court determined that the landlord had complied with his duty to provide reasonable security:

" '* * * while the landlord has some duty to provide secure common areas in an apartment complex, he is not an insurer of the premises against criminal activity. * * * Thus, the duty on the landlord is only to take some reasonable precautions to provide reasonable security.

" '*Id.* at 132 [528 N.E.2d at 586–587]. See, also, *Kelly v. Bear Creek Invest. Co.* (Feb. 14, 1991), Cuyahoga App. No. 58011, unreported [1991 WL 19152], in which this court determined that liability only attaches where the landlord should have reasonably foreseen the criminal activity in question and failed to take reasonable precautions to prevent such activity, and this failure was the proximate cause of the tenant's harm. Foreseeability is based upon whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77 [15 OBR 179, 180–181], 472 N.E.2d 707, 710; *Eagle v. Mathews–Click–Bauman, Inc.* (1995), 104 Ohio App.3d 792, 797 [663 N.E.2d 399, 402–403].'

"In the case *sub judice,* a review of the record demonstrates that the trial court properly determined that defendants-appellees were entitled to judgment as a matter of law on plaintiffs-appellants' negligence claim. As the trial court properly determined, the issue in this case is the foreseeability of Boomer's sexual assault upon James Doe. While it may have been foreseeable from Boomer's prior behavior that further altercations with James Doe would occur, there is nothing in the record to indicate that Boomer would escalate his activities to the level where the equivalent of a first-degree felony sexual assault was likely to occur. This is particularly true in light of the fact that, while Boomer had undoubtedly been an unruly juvenile delinquent, he had not engaged in anything

sexual in nature prior to the March 31, 1993, sexual assault. As this court previously stated in *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071:

" '* * * a court must be mindful of two other factors when evaluating whether a duty is owed in cases such as this one. The first is that a business is not an absolute insurer of the safety of its customers. The second is that criminal behavior of third persons is not predictable to any particular degree a certainty. It would be unreasonable, therefore, to hold a party liable for acts that are for the most part unforeseeable. Thus, the totality of the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others.'

"*Id.* at 193–194, 583 N.E.2d at 1075. See, also, *Maier v. Serv–All Maintenance, Inc.* (1997), 124 Ohio App.3d 215, 705 N.E.2d 1268. Under the totality of the circumstances presented, this court cannot say that, under the present facts, the criminal act of a third-party was a foreseeable event for which defendants-appellees could be found liable under a negligence theory. *Flair Corporation, supra; Daniels v. Thistledown Racing Club, Inc.* (1995), 103 Ohio App.3d 281, 659 N.E.2d 346; *Rescigno v. Heyduk* (Aug. 15, 1996), Cuyahoga App. No. 69172, unreported [1996 WL 465374]; *Collins v. Down River Specialties, Inc.* (Apr. 20, 1998) [128 Ohio App.3d 365, 715 N.E.2d 189], Cuyahoga App. Nos. 70840, 70842, unreported."

In applying the foregoing principles to the case at hand, we first note that Stacy had a long and apparently turbulent relationship with Brenda. Although Stacy claims that she alerted the landlord's agents to the stalking relationship, the episode that eventually resulted in these injuries could not have been reasonably foreseen by the landlord or its agents.

Once the firebombing of the building occurred, the police and fire authorities were brought in. It was suggested that Stacy spend the night elsewhere than in the firebombed apartment. Disregarding this advice because it was inconvenient, Stacy returned to her apartment and spent the early hours of the morning visiting or on the phone with her girlfriends. To her horror, she looked out the window and saw Brenda circling the block in her car, apparently continuing the stalking mode. Stacy took no action to protect herself against these fresh developments. She did not call 911, the police, or the emergency number the fire officials had given her, nor did she alert the landlord's agents to this new threat. She made no effort to leave the building or otherwise seek protection, even though her mother and grandmother both lived in the area. Soon thereafter, Stacy dozed off while still on the phone and awoke to find the front door to her apartment ablaze. In a matter of minutes, overcome by panic, she did not telephone anybody but jumped out of the third floor window of her apartment,

sustaining the serious injuries of which she complains. Her young son followed her out the window, and she succeeded in breaking his fall.

Under the totality of these extraordinary circumstances, we hold that the apartment management was not bound to foresee the risk of harm that eventually resulted. The record reflects that the landlord was not informed at or after the time of the first firebomb of the danger posed by Brenda. It was also not foreseeable to the landlord or its agents that Stacy would return to the fire-bombed apartment; that she would take no action to alert the authorities or anybody else that her stalker had returned to the scene of the crime and was circling the apartment in her car; that Stacy would drift off to sleep knowing that her stalker was at hand; that the stalker would set fire to her apartment door after the earlier firebombing episode had brought police and fire forces to the scene; that Stacy would ignore potential assistance available by telephone; and, finally, that Stacy would panic and leap from a third story window as a first resort to her terrifying predicament. No reasonable person could foresee or predict this bizarre turn of events.

Assignment of Error II is overruled.

"I. The trial court erred when it entered summary judgment in favor of defendant SB–92 since plaintiffs' action was commenced within the applicable statutory periods."

Given our disposition of Assignment of Error II, we do not find it necessary to address Assignment of Error I which is moot. App.R. 12(A)(1)(c).

*Judgment affirmed.*

Michael J. Corrigan, J., concurs.

Dyke, A.J., concurs in judgment only.