JOURNAL ENTRY AND OPINION
{¶ 1} In this consolidated appeal,[1] plaintiffs, Carolyn Brown, administratrix of the estate of Leatrice A. Brown, and Curtis Campbell, administrator of the estate of Dorna Lee, appeal the granting of summary judgment to defendant, Kareen Campbell.[2]
 {¶ 2} Carolyn Brown and Kareen Campbell are sisters. Carolyn Brown had a daughter, Leatrice. Kareen also had a daughter, Dorna Lee. Leatrice and Dorna were cousins and lived together at a home co-owned by their mothers and located at 3990 East 123rd
Street in Cleveland, Ohio.
 {¶ 3} In 2002, Dorna was married to Da'mon Lee. In October of that same year, Dorna filed a statement with the Cleveland Municipal Court claiming that Da'mon had threatened her life. Finding Da'mon guilty of menacing in violation of R.C. 2903.22, the court issued an anti-stalking protection order, along with an arrest warrant for Da'mon.
 {¶ 4} According to plaintiffs, Laetrice and Dorna were afraid of Da'mon and feared he would come to their home to harm them. The cousins asked Kareen to replace a side and back door, composed of glass and wood, because they felt they were not strong enough to keep out intruders, including Da'mon.
 {¶ 5} On May 9, 2003, Da'mon entered the house through the side door and shot and killed Laetrice and Dorna.
 {¶ 6} All parties filed motions for summary judgment. The trial court granted only Kareen's motion. Plaintiffs appeal presenting three assignments of error. Because Assignments of Error I and III both involve the issue of foreseeability, we address them together.
I. The trial court committed reversible error, when, without authority to do so, it reversed a municipal court determination that harm to protected individuals was probable or foreseeable.
III. The evidence before the trial court presented questions on the issue of negligence, which should have been submitted to the trier of fact for determination.
 {¶ 7} Plaintiffs argue that the trial court erred in granting Kareen's motion for summary judgment because a genuine issue of material fact remains about whether Dorna and Laetrice's murders were foreseeable.
 {¶ 8} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is appropriate when, after the evidence is construed most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, which is adverse to the nonmoving party.Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201; see, also, Civ.R. 56(C).
 {¶ 9} After the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E) Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385, 667 N.E.2d 1197. All doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-59, 604 N.E.2d 138.
 {¶ 10} In the case at bar, plaintiffs demonstrated that Kareen knew about the 2002 Cleveland Municipal Court order which determined that Da'mon had committed the offense of menacing[3] against Dorna. Kareen also knew about the subsequent protection order[4] the court issued to protect Dorna against Da'mon.
 {¶ 11} According to plaintiffs, Kareen's knowledge about Da'mon's past conduct establishes that "it was probable or foreseeable that the Defendant, unless restrained, would do harm to Dorna Lee or members of her household." Plaintiffs' Brief on Appeal, at p. 7. Plaintiffs claim that Kareen assumed the primary responsibility for maintaining the house and, therefore, she should have replaced the side door to prevent Da'mon from gaining access to Dorna and Laetrice and thus to prevent their murder.
 {¶ 12} According to plaintiffs, Kareen's husband, plaintiff Curtis Campbell, either did most of the repairs at the house himself or arranged to have others do them. Since Kareen co-owned the property and had her husband assume repairs at the house, plaintiffs argue, she had a contractual duty as their landlord to provide appropriate security for them as tenants.
 {¶ 13} "As a general rule, landlords have no duty to protect their tenants from the criminal acts of third persons." Johnsonv. Spectrum of Supportive Servs., Cuyahoga App. No. 82267, 2003-Ohio-4404, at ¶ 18;[5] Cherkiss v. Thomas (Apr. 13, 1984), Lucas App. No. L-83-416, at *3.
 {¶ 14} A landlord will have a duty, however, if plaintiff can prove that "the landlord should have reasonably foreseen the criminal activity and that he failed to take reasonable precautions to prevent such activity, and this failure was the proximate cause of the tenant's harm." Id.
 {¶ 15} Foreseeability is based upon whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act.Federal Steel Wire Corp. v. Ruhlin Constr. Co. (1989),45 Ohio St.3d 171, 174, 543 N.E.2d 769; Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 472 N.E.2d 707. "The foreseeability of harm generally depends on a defendant's knowledge." Cole v. Pine Ridge Apts. Co. II, Lake App. No. 2000-L-020, 2001-Ohio-8788, at *13.
 {¶ 16} The foreseeability of criminal acts, that is, the defendant's knowledge, is determined from the totality of the circumstances. Johnson, supra.; Sayles v. SB-92 L.P. (2000),138 Ohio App.3d 476, 741 N.E.2d 613.
[A] defendant, who is in control of certain premises, may be liable for injuries to others notwithstanding the intervening criminal acts of some parties, where the defendant knows that there has been a history of repeated tampering or vandalism of the same or similar nature occurring on such premises, and it is foreseeable that persons could be injured thereby without the implementation of adequate protective measures.
Ruhlin, at 174, 177.
 {¶ 17} Plaintiffs argue alternatively that Kareen was on notice that Da'mon was violent and had threatened to kill Dorna in the past. Because of what Kareen knew about Da'mon, plaintiffs argue, the murder of Laetrice and Dorna was foreseeable and Kareen had a duty to insure that the house was secure and inviolable from Da'mon. While it may have been foreseeable from Da'mon's past menacing behavior that he might continue to menace Dorna, there is nothing in the record to indicate that Da'mon's behavior would escalate into murdering Dorna and Laetrice. There is no evidence that Da'mon ever violated the protection order between October 2002, when it was issued, and May 8, 2003, when he killed Dorna and Laetrice.
 {¶ 18} According to plaintiffs, Laetrice and Dorna notified Kareen that they were afraid of Da'mon and that they wanted the side and rear doors replaced with stronger security doors. Plaintiffs claim that Kareen promised to replace the doors but never did. Despite the women's fears, however, there is no evidence that, other than the night of May 8, 2003, Da'mon ever attempted or accomplished an uninvited entry into the East 123rd Street house. Thus it was not foreseeable that Da'mon would forcibly enter their home. Moreover, there is no evidence that changing one door would have prevented Da'mon from entering by another method such as merely breaking a window. See Cherkiss,
supra, at *4, (assault could have been perpetrated even if a defective window latch had been repaired; assailant could enter the home by merely breaking the window).
 {¶ 19} Plaintiffs claim that Kareen knew Da'mon had hit Dorna in the past but fail to specify when and where that incident purportedly occurred. Plaintiffs also allege that Kareen knew that Da'mon had at some point in time locked Dorna out of their marital home. Even though Dorna's October 2002 menacing complaint states that Da'mon "threatened my life multiple times this week," there is no evidence that he ever made such threats again. After 2002, moreover, when the menacing determination was made and the protective order issued, there is no evidence that Da'mon ever went to the East 123rd Street address or that he exhibited any behavior that was threatening or abusive towards Dorna or Laetrice. In point of fact, after his menacing conviction, there is no evidence that Da'mon ever threatened either woman.
 {¶ 20} Moreover, the parties agree that on the night of the murders, the house's alarm system was not turned on even though the alarm was fully functional. The fact that the alarm was not on the night Da'mon broke in and killed Dorna and Laetrice undermines plaintiffs' argument that both women were afraid Da'mon was going to break in and harm them. Furthermore, plaintiff Carolyn Brown acknowledged that she knew Dorna was trying to make her marriage to Da'mon work after the October 2002 incident. From this fact, one can infer that the circumstances that existed when Dorna obtained the protective order in 2002 had changed. Between October 2002 and May 8, 2003, there is no evidence that Da'Mon had done anything to give Dorna or Laetrice reason to believe that he would harm either of them.
 {¶ 21} From the record before this court, and under the totality of the circumstances in this case, we find no evidence that Da'mon's murder of Dorna and Laetrice, as well as his breaking through the door, was reasonably foreseeable to Kareen. Accordingly, plaintiffs' first and third assignments of error are overruled.
II. The evidence before the trial court presented questions on the issue of breach of contract, which should have been submitted to the trier of fact for determination.
 {¶ 22} Plaintiffs argue that Kareen's oral promises to provide a stronger side door constitute an enforceable contract.
 {¶ 23} A landlord may contractually create a duty to provide security to his tenants. See Blair v. Property ManagementConsultants (1987), 40 Ohio App.3d 103, 531 N.E.2d 752. As in any contract, however, "there must be a meeting of the minds, * * * an offer on the one side and an acceptance on the other."Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79, 442 N.E.2d 1302.
 {¶ 24} At her deposition in the case at bar, Kareen Campbell testified that Dorna and Laetrice had spoken to her about purchasing a new side and back door. In either September or October 2002, just before Dorna obtained the protective order, Kareen told the women she would get new doors. She never said when she would do so, however. There is no evidence that Kareen made a firm offer to install new doors or that either Dorna or Laetrice repeated the door request after October 2002.
 {¶ 25} Further, there is nothing in the record showing any acceptance by either Dorna or Laetrice. Obviously, with both women dead, it is virtually impossible to know what they asked for or what they provided or would have provided as consideration for new doors.
 {¶ 26} On the record before this court, we do not find any elements of an enforceable contract concerning new doors. Accordingly, plaintiffs' second assignment of error is overruled.
Judgment accordingly.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Rocco, J., concur.
[1] Court of Appeals Case Nos. 85698 and 85702.
[2] Kareen Campbell is Curtis Campbell's wife.
[3] R.C. 2903.22(A), which states the menacing violation, provides that: "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
[4] Other protected persons named in the order were Myles Lee, who is Dorna and Da'mon's three-year old son, and Laetrice.
[5] Appeal denied in Johnson v. Spectrum of Supportive Serv.,100 Ohio St.3d 1545, 800 N.E.2d 750, 2003-Ohio-6879.