[Cite as *Adkins v. RLJ Mgt. Co.*, 2011-Ohio-6609.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| JENNIFER ADKINS | : | William B. Hoffman, P.J. |
| | : | Sheila G. Farmer, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. CT2011-0012 |
| | : | |
| | : | |
| RLJ MANAGEMENT COMPANY | : | O P I N I O N |
| | | |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:     Civil Appeal from Muskingum County
Court of Common Pleas Case No.
CC2008-0242

JUDGMENT:                                     Affirmed

DATE OF JUDGMENT ENTRY:          December 16, 2011

APPEARANCES:

For Plaintiff-Appellant                        For Defendant-Appellee

MILES D. FRIES                                 JEFFREY A. LIPPS
Gottlieb, Johnston, Beam &              MICHAEL N. BEEKHUIZEN
Dal Ponte                                          280 Plaza, Suite 1300
320 Main Street, P.O. Box 190        280 North High Street
Zanesville, Ohio  43702-0190          Columbus, Ohio  43215

*Edwards, J.*

{¶1} Plaintiff-appellant, Jennifer Adkins, appeals from the February 23, 2011, Judgment Entry of the Muskingum County Court of Common Pleas entering judgment in favor of appellee RLS Management Company, Inc.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} Appellant Jennifer Adkins was a tenant at Concord Square Apartments in New Concord, Ohio. The apartment complex is managed by appellee RLJ Management Company, Inc. Appellant moved into the apartment complex on December 1, 2006.

{¶3} Before moving into the complex, appellant asked Sheila, the apartment manager, if appellee could put up a light on the side of the building that her apartment faced because it was "pitch black" and offered to put up her own light if appellee could not. According to appellant, Sheila agreed that there was inadequate lighting and indicated that other tenants had complained about the lack of lighting. See Affidavit of Jennifer Adkins attached to appellee's response to appellant's Motion for Summary Judgment.

{¶4} On or about May 22, 2007, appellant submitted a Request for Service or Repair to appellee stating, in relevant part, "outside light at end of sidewalk (end of building)." Appellant testified that after moving in, she had several conversations with Sheila, the apartment manager, regarding lighting. One of the conversations occurred before appellant turned in her written request. Appellant testified that during such conversation, she went up to the office and "brought it up to her, that when you're walking down the sidewalk, once you hit that very end of it where you have to turn left, it that – in that corner where you- where the two meet, that that's basically where the

lighting stops. You can't see anything past it." Deposition of Jennifer Adkins at 29. After being told that she had to put her request for lighting in writing, appellant filled out a written request and took it to the office.

{¶5} Appellant testified that she had similar conversations with Sheila two or three more times during the summer of 2007. She testified that she put her request for lighting in writing twice. After Sheila was replaced by a new apartment manager named Karen, appellant had conversations with Karen about the lighting. Appellant testified that she asked if she could have a light put up and was told that she could not. She further testified that her conversations with Karen occurred after the incident. Appellant, in her affidavit, stated that she told Karen about criminal activity that had taken place at the complex, including a stabbing, a shooting and drug activity.

{¶6} Appellant also had a conversation with Sue, a district manager, about the lack of lighting and also made one phone call to the headquarters in Columbus.

{¶7} During the early morning hours of October 6, 2007, appellant was attacked from behind while unlocking the door to her apartment and raped. Thereafter, on March 14, 2008, she filed a complaint alleging negligence against appellee. While one of the causes of action related to a May 5, 2007, foot injury that appellant had suffered in her apartment, the other related to the rape. Pursuant to a Partial Dismissal Entry filed on November 18, 2009, the cause of action and any claims related to the May 5, 2007, foot injury were dismissed with prejudice.

{¶8} On October 26, 2010, appellee filed a Motion for Summary Judgment. As memorialized in Findings and Decision filed on February 14, 2011, the trial court granted appellee's motion and ordered counsel for appellee to prepare the final

Judgment Entry. Pursuant to a Judgment Entry filed on February 23, 2011, the trial court granted judgment in favor of appellee.

{¶9}    Appellant now appeals from the trial court's February 23, 2011, Judgment Entry.  Appellant has failed to comply with App.R. 16(A)(3) as her brief does not include "[a] statement of the assignments of error presented for review with reference to the place in the record where each error is reflected."  Appellant argues, in essence, that the trial court erred in granting summary judgment in favor of appellee.

{¶10} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ. R. 56(C) which provides in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶11} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary

judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 1997-Ohio-259, 429, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶12} In order to establish a claim for negligence, a plaintiff must establish a duty owed by the defendant/defendants and that a breach of the duty proximately caused injury to the plaintiff. *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614. As a general rule, landlords, such as appellee, have no duty to protect their tenants from the criminal acts of third persons. *Doe v. Beach House Dev. Co.* (2000), 136 Ohio App.3d 573, 737 N.E.2d 141. However, a landlord does have a duty to take reasonable measures to provide reasonable security in common areas. *Id.* Liability for a breach of that duty attaches only if the tenant can show that: (1) the landlord could have reasonably foreseen criminal activity and did not take reasonable measures to provide reasonable security; and (2) the negligence of the landlord existed at the time the criminal activity took place and proximately caused the tenant's injury. *Id.* Foreseeability is based upon "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act." *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.

{¶13} As noted by the court in *Johnson v. Spectrum of Supportive Services*, Cuyahoga App. No. 82267, 2003-Ohio-4404, "A court must be mindful of two other factors when evaluating whether a duty is owed in cases such as this one. *Jane Doe, et al. v. Beach House Dev. Co., et al.* (2000), 136 Ohio App.3d 573, 737 N.E.2d 141 citing, *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071. The first is that a business is not an absolute insurer of the safety of its customers. *Id.* The second is that criminal behavior of third persons is not predictable to any degree of certainty. *Id.* It would be unreasonable, therefore, to hold a party liable for acts that are, for the most part, unforeseeable. *Id.* Thus, the totality of the circumstances must be somewhat 'overwhelming' before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others. *Id.*

{¶14} "The 'overwhelming evidence' standard requires more than knowledge of a potential future problem based on past occurrences. It requires (1) specific knowledge of a potential future problem based on past occurrences along with (2) a substantial likelihood that such an incident would occur. *Walworth v. B.P. Oil Co.* (1996), 112 Ohio App.3d 340, 678 N.E.2d 959. *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071.

{¶15} "When liability is asserted against a landowner for the criminal acts of third parties, the burden is upon the plaintiff to establish that the owner knew or should have known about the assailant's dangerous propensities or knew the attack was imminent. *King v. Lindsey* (1993), 87 Ohio App.3d 383, 387, 622 N.E.2d 396 citing, *Meyers v. Ramada Inn* (1984), 14 Ohio App.3d 311, 471 N.E.2d 176." Id at paragraphs 20-22.

{¶16} Upon our review of the record, we find that appellant failed to present any evidence demonstrating that her rape was foreseeable to appellee. Appellant, in support of her argument that her rape was foreseeable, points to her own affidavit and the affidavit of Chief Ed Stewart of the Village of New Concord. Appellant, in her affidavit, stated, in relevant part, as follows:

{¶17} "During these conversations with Karen, I told her that I was concerned about the lack of lighting because of the things that I had heard. I mentioned to her that I was aware that there had been a stabbing at the complex, which took place after dark and that I was also aware that there had been a shooting. I had also become aware that there was a lot of drug activity in the complex and a number of people coming in and out of the complex at night. Karen acknowledged that she was aware of the stabbing and also confirmed that other tenants had complained about there not being enough lights around the buildings and it being unsafe, especially with so many people not living in the complex being there late at night due to the drug activity. Because of the lack of lighting, the area that my apartment faced and other areas of the complex would be pitch black at night. Karen acknowledged that the lack of lighting was a security concern, that she had brought this up to her superiors but that they had not take any action nor authorized her to take any. Karen also acknowledged that she was aware that there was a lot of domestic violence in the complex, a lot of drug activity, and that the lack of lighting presented a security problem because of people coming in and out of the complex at night. Because of the proximity of my apartment to a wooded area, and the complete lack of light on that side of building, I expressed my concern about this as a safety issue."

**{¶18}** In turn, Chief Stewart, in his affidavit, stated, in relevant part, as follows:

**{¶19}** "I am familiar with the Concord Square Apartments where the Plaintiff Jennifer Adkins resided at the time of the subject incident. I am aware that they had security problems at the complex and that there had been previous criminal activity, including violent criminal behavior. Approximately two years prior to the subject incident, a stabbing occurred on the backside of one of the complex buildings. The stabbing occurred at night. There was complete lack of lighting on the backside of that building as was the case on the backside of Jennifer Adkins' building. The darkness provided a perfect cover for an assailant to conceal not only his identify (sic) but also his presence. The lack of lighting was a proximate cause of that stabbing.

**{¶20}** "There had been other violent criminal activity that had occurred at the subject complex including a shooting that occurred approximately three of (sic) four years before the subject incident. There had also been a number of incidents involving domestic violence, some of which involved physical injury."

**{¶21}** Chief Stewart, in his affidavit, further stated that he recommended that security cameras be installed and adequate lighting be provided.

**{¶22}** During her deposition, appellant was questioned about the stabbing. She testified that a girl in the deli at the IGA told her that she had been stabbed and that she believed the stabbing occurred between September of 2005 and December of 2006. Appellant testified that Chief Stewart told her that the girl was stabbed by someone that she knew. According to appellant, the stabbing did not occur in front of her apartment. When questioned about the shooting, appellant testified that the Chief had told her that the shooting had occurred seven to nine years before and involved domestic violence.

**{¶23}** We concur with appellee that these incidents do not "constitute 'overwhelming evidence' of any 'substantial likelihood' that [appellant] would be raped." We find that a stabbing one to two years earlier, a shooting seven to nine years previously and unspecified drug activity does not establish that appellant's rape was foreseeable. Both the shooting and the stabbing involve attacks by acquaintances and/or spouses and did not occur in the same location as the rape. The incidents were not the "same or similar" in nature to the rape. See for example, *Brown v. Campbell*, 2005-Ohio-3855. While appellant maintains that there was other miscellaneous criminal activity, she provided no details with respect to the same. She thus provided no evidence that such criminal activity was the same or similar to the rape.

**{¶24}** Moreover, we find that appellant failed to present any evidence that any lack of adequate lighting was the proximate cause of her rape. The following testimony was adduced when appellant was questioned about the rape:

**{¶25}** "A. I was - - I had the screen door opened so I was standing in between the doors. I was trying to put my key in the lock to unlock the door. So I was standing on the stoop with the screen door kind of leaning against my back while I was unlocking the door.

**{¶26}** "Q. Okay. I believe I saw a reference to the police report[1] saying that your front - - your porch light was turned off at the time. Is that accurate?

**{¶27}** "A. No. That's not accurate. It was turned on, but the light bulb was unscrewed. So I guess to some degree there's truth to that because it was off, but it was not - -

**{¶28}** "Q. Did you ever tell that to the police?

---

[1] Part of the police report was attached as Exhibit C to appellee's Motion for Summary Judgment.

{¶29} "A. Uh-huh, yes.

{¶30} "Q. Okay. Do you know why that's not reflected in the police report?

{¶31} "A. I have no idea.

{¶32} "Q. Do you have any idea why that's not reflected in your interview with the police?

{¶33} "A. I don't know. I mean, it was a detail that didn't - - I don't - - I don't know. I mean, I was obviously upset and the details of what happened seemed far more significant to me at the time.

{¶34} "Q. When did you figure out that the light bulb was unscrewed?

{¶35} "A. The day that - - when this happened, it was in the early morning hours; and then I got home from the hospital that afternoon and a friend of mine was there with me, and he - - he had already gone to the apartment before I went back. And he actually discovered that the - - that it was unscrewed because I kept saying I never leave - - I don't ever leave it - - my porch light was always on if there was any chance it was going to be after dark because it's pitch black back there, and there is no other light." Deposition of Jennifer Adkins at 16-18.

{¶36} Under either scenario, appellee was not responsible for the lack of adequate lighting near appellant's apartment door. Clearly, appellee was not responsible for appellant's failure to turn on her light or appellant's attacker unscrewing the same. In addition, in her police report, appellant stated that she got a glimpse of her offender after he had walked away into the lights at the end of her building. Appellant, during her deposition, admitted making such statement. The following is an excerpt from her deposition testimony:

**{¶37}** "Q. Okay.  Do you remember as you sit here then what lights you were referring to?

**{¶38}** "A. If you walk out of my apartment and you walk down the long walk, which is almost the length of the entire building, and you turn right, halfway down that long walk in the center of the building at the top, there is a light and it has, I believe – yeah.  It's right in the center of the side of the building. It's a small light that lets off a small amount of light.

**{¶39}** "And as he walked around that corner back toward the parking lot area, that's when I got a glimpse of kind of – kind of a silhouette.  I mean, I couldn't give you details of his face or - ."  Transcript of Deposition of Jennifer Adkins at 19-120.

Based on the foregoing, we find that the trial court did not err in granting appellee's Motion for Summary Judgment.

{¶40} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Edwards, J.

Hoffman, P.J. and

Farmer, J. concur

_____

_____

_____

                                    JUDGES

[Cite as *Adkins v. RLJ Mgt. Co.*, 2011-Ohio-6609.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JENNIER ADKINS | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| RLJ MANAGEMENT COMPANY | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. CT2011-0012 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES